STATE *ex rel.* ESTES, DISTRICT ATTORNEY-GENERAL, *v.* PERSICA *et al.**

(*Jackson.* April Term, 1914.)

1, **STATUTES.** Plurality of subjects. Validity.

Acts 1913 (2d Ex. Sess.), ch. 2, entitled "An act to define and more effectually provide for the abatement of certain public nuisances," which were named in the first section, and included the maintenance of gambling and disorderly houses as well as as the sale of intoxicants, is not in violation of Const., art. 2, sec. 17, providing that no bill shall embrace more than one subject, which shall be expressed in its title, because authorizing proceedings against the principals, the aiders, and abettors, and the owners of the buildings in which the nuisance may be conducted. (*Post, p.* 54.)

Constitution cited and construed: Art. 2, sec. 17.

2. **STATUTES.** Validity.

Nor is the title insufficient to give notice of the purpose of the act as required by the constitutional provision, though the act applied to a number of nuisances. (*Post, p.* 55.)

Cases cited and distinguished: State v. Lasater, 68 Tenn., 585; Morrell v. Fickle, 71 Tenn., 82; Wilson v. Benton, 79 Tenn., 56; State v. True, 116 Tenn., 294; Cannon v. Mathes, 55 Tenn., 519; Frazier v. Railroad, 88 Tenn., 140; State v. Yardley, 95 Tenn., 546; Ryan v. Terminal Co., 102 Tenn., 128; State v. Brown, 103 Tenn., 450; Condon v. Maloney, 108 Tenn., 83; Furnace Co. v. Railroad, 113 Tenn., 728; Knoxville v. Gass, 119 Tenn., 438; State ex rel. v. Hamby, 114 Tenn., 363; Rhinehart v. State, 121 Tenn., 420; Scott v. Marley, 124 Tenn., 388; Home Tel. Co. v. People's Tel. Co., 125 Tenn., 270.

---

*On the question of the constitutional right to prohibit sale of intoxicating liquor, see note in 15 L. R. A. (N. S.), 908.

State ex rel. v. Persica.

3. **INTOXICATING LIQUORS.** Enjoining liquor nuisance. Power of legislature.

It is within the power of the legislature to provide that a prosecution to enjoin a public nuisance, such as a liquor nuisance, may be instituted on the relation of private citizens. (*Post, pp.* 56, 57.)

4. **CONSTITUTIONAL LAW.** Class legislation. What constitutes.

In view of Shannon's Code, sec. 4506, decaring that the State shall commence and prosecute suits according to the laws of the land, except that no security shall be required as in case of individuals, Acts 1913 (2d Ex. Sess.), ch. 2, authorizing ten or more citizens and freeholders to file a petition in the name of the State for an injunction to abate certain public nuisances, and only requiring the giving of a bond conditionally to pay all costs and damages, instead of the usual bond in injunction cases, is not void as class legislation contrary to Const., art. 1, sec. 8 (Const. U. S., Amend. 14) prohibiting deprivation of life, liberty, and property without due process of law, and Const., art. 11, sec. 8, providing that the legislature shall pass no law granting any individual or individuals immunities or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within its provisions; for the freeholders merely act as an agent of the State in enforcing the law. (*Post, pp.* 56, 57.)

Constitution cited and construed: Art. 1, sec. 8; art. 11, sec. 8.

Cases cited and approved: Webster v. State, 110 Tenn., 491; Kirk v. State, 126 Tenn., 7; State v. Mill Co., 123 Tenn., 399; Motlow v. State, 125 Tenn., 547; Debardelaben v. State, 99 Tenn., 649; Brinkley v. State, 125 Tenn., 371; Carlton v. Rugg, 149 Mass., 550; Mugler v. Kansas, 123 U. S., 623; Kidd v. Pearson, 128 U. S., 1; Eilenbecker v. District Court, 134 U. S., 31; City of Memphis v. Fisher, 68 Tenn., 240; Malone v. Williams, 118 Tenn., 431.

Code cited and construed: Sec. 4506 (S.).

130 Tenn.—4

State ex rel. v. Persica.

5. NUISANCE. Public nuisances. Power of legislature to determine.

The determination of what public nuisances shall be included in an act to provide for a more effective abatement is purely a legislative question, and the validity of the act cannot be attacked on the ground that some nuisances were not included. (*Post, p.* 58.)

Case cited and approved: Motlow v. State, 125 Tenn., 547.

6. CONSTITUTIONAL LAW. Distribution of power. Authority of legislature.

The legislature, in order to prevent fraud and make violation of law more difficult, may forbid acts which in themselves are harmless. (*Post, p.* 59.)

Cases cited and approved: Kirk v. State, 126 Tenn., 16; State v. Mill Co., 123 Tenn., 399; Motlow v. State, 125 Tenn., 547.

7. CONSTITUTIONAL LAW. Intoxicating liquors. Deprivation of property wthout due process. What constitutes. Nuisance. Injunction.

Acts 1913 (2d Ex. Sess.), ch. 2, providing for the enjoining of certain nuisances, such as selling of intoxicating liquors, upon proceedings instituted either by the attorney-general, etc., or by citizens and freeholders who alone shall give bond, and that upon application for injunction the place in which the business is carried on shall be closed before hearing, and though the owner be not a party, is not in violation of Const., art. 1, sec. 8 (Const. U. S. Amend. 14), prohibiting the deprivation of property without due process; for the closing of the building in which the nuisance is alleged to be carried on is a valid exercise of the State's police power, and the proceeding is quasi criminal in character. (*Post, pp.* 59, 60.)

Constitution cited and construed: Art. 1, sec. 8.

8. CONSTITUTIONAL LAW: Nuisance. Distribution of governmental powers. Interference with power of judiciary. Abatement.

Acts 1913 (2d Ex. Sess.), ch. 2, provides that the selling of intoxicating liquors, the keeping of disorderly houses, and the

State ex rel. v. Persica.

running of gambling houses shall constitute public nuisances; that proceedings for abatement may be begun in the name of the State upon the relation of the attorney-general, of. the district attorney-general, or of ten or more citizens and freeholders; that the judges and chancellors shall pass upon the amount of the bond in case petition for abatement is filed by citizens; that the judges or chancellors, upon the presentation of the bill alleging the existence of a nuisance, shall award a temporary writ of injunction. *Held*, that the statute contemplates the exercise of judicial functions by the judge or chancellor to whom a petition for abatement is brought, and merely prescribes a rule of practice upon the filing of a proper petition for abatement, the sufficiency of which is to be determined by the court, and hence does not violate Const., art. 2, sec. 2, declaring that no one of the three separate branches of government shall exercise powers belonging to the other. (*Post, pp.* 61-66.)

Constitution cited and construed:    Art. 2, secs. 1 and 2.

Cases cited and approved:    Mugler v. Kansas, 123 U. S., 623; Kansas v. Ziebold, 123 U. S., 623; Eilenbecker v. District Court, 134 U. S., 31.

9. **STATUTES.    Enactment.    Constitutional provisions.**
Acts 1913 (2d Ex. Sess.), ch. 2, was first introduced in the senate, where it was passed three consecutive times, and then transmitted to the house, where an identical measure had already been read and passed twice. *Held*, that the senate bill could be substituted for the former house bill, and, though after substitution it was enacted only once in the house, there was a compliance with Const., art. 2, sec. 18, declaring that every bill shall be read once on three different days and passed each time in the house where it originated before transmission to the other.    (*Post, pp.* 67, 68.)

Constitution cited and construed:    Art. 2, sec. 18.

Cases cited and distinguished:    Archibald v. Clark, 112 Tenn., 532; Southern Railway Co. v. Memphis, 126 Tenn., 267.

State ex rel. v. Persica.

10. **STATUTES.   Enactment.**

Const., art. 2; sec. 18, declaring that every bill shall be read once on three different days, and passed each time in the house where it originated before transmission to the other, does not require the lapse. of three full days before a bill originating in one house is transmitted to the other; hence Acts 1913 (2d Ex. Sess.), ch. 2, which was introduced in the senate on October 14th, read and passed on that day, on the next, and on the sixteenth, was properly transmitted to the house on the sixteenth.   (*Post, p.* 69.)·

Constitution cited and construed:   Art. 2, sec. 18.

11. **NUISANCE.   Injunction.   Preliminary writ.   Notice.**

Acts 1913 (2d Ex. Sess.), ch. 2, which provides for the abatement of· certain public nuisances, including the unlawful sale of intoxicating liquors, and declares in section 4 that, upon presentation of a bill alleging that the nuisance complained of exists, the court shall issue a temporary injunction with such bond as required by law in such cases, if the bill is filed by citizens and freeholders, but none when the. bill is filed by the attorney-general, etc., if it shall be made to appear to the satisfaction of the court that the allegations of the bill or petition are true, and that five days' notice in writing shall be given the defendants of the hearing of the application, does not contemplate a hearing of the application, nor require the giving of five days' notice of the issuance of a temporary injunction where the bill is filed by citizens and freeholders. (*Post, pp.* 69, 70.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. —F. H. HEISKELL and FRANCIS FENTRESS, Chancellors.

FRANK M. THOMPSON, Attorney-General, and Z. N. ESTES, District Attorney-General, and G. T. FITZHUGH. for the State.

CARUTHERS EWING and ANDERSON & CRABTREE, for appellants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This case stands on demurrer. The bill was predicated on chapter 2 of the public acts of the second extra session of the general assembly of 1913. See page 665 of the published acts of that year. The bill was filed on the relation of Hon. Z. N. Estes, district attorney-general, and sought a decree abating as a public nuisance a certain business, which it averred J. J. Persica and J. P. Lynch had been carrying on, engaged in, and maintaining in a certain building located at 119 South Court avenue, in the city of Memphis, since March 1, 1914. The business was averred to be the sale and tippling of intoxicating liquors in violation of the laws of the State. One Rideout, averred to be the bar-keeper of the parties above named, was made a defendant, as was the owner of the building in which the business was averred to have been conducted.

The demurrers of the defendants challenge the constitutionality of the act on many grounds. Chancellors Heiskell and Fentress, sitting jointly, overruled the demurrers, from which action the demurrants appealed. The chancellors construing the act held that,

under it, the defendant or defendants were entitled to five days' notice in writing of the hearing of the application for an injunction before the writ would issue, and from this part of the decree, the relator appealed.

We will first dispose of the questions made by the demurrants. They say the bill embraces more than one subject, and for that reason contravenes section 17 of article 2 of the State Constitution, and they point to the proceedings authorized by the act (1) against principals, (2) against aiders and abettors, and (3) against owners of the building in which the nuisance may be conducted; and the argument is that the penalties by the act denounced against each of these three classes of participants in a public nuisance is a separate subject of legislation. But this argument overlooks the broad character of the title of the act. Its title was "An act to define and more effectually provide for the abatement of certain public nuisances." Its purpose was to more effectually provide for the abatement of certain public nuisances, which are named in its first section, and, in order to carry out that general purpose, the proceedings authorized against the three classes of participants above named were obviously necessary to the execution of the general purpose; that is to say, they were germane to that purpose; they were the proceedings which the law-making body considered necessary to be taken to carry out that general purpose, and, when so considered, instead of be-

ing separate subjects of legislation, they are readily seen to be but parts of one subject.

It is argued that the title of the act is restrictive. This is true only as to the kinds of public nuisances to which it was designed to apply. In all other respects the title is as broad as it could be and yet give fair notice of the general purpose of the act. Under a title so broad, any number of means, agencies, or instrumentalities for the accomplishment of the general purpose of the act may be made use of in its body, so long as each of them be germane to the general purpose disclosed by the title. Our legislation affords many illustrations of what has just been said, as may be seen by reference to the following cases: *State* v. *Lasater,* 9 Baxt. 68 Tenn.), 585; *Morrell* v. *Fickle,* 3 Lea (71 Tenn.), 82; *Wilson* v. *Benton,* 11 Lea (79 Tenn.), 56; *State* v. *True,* 116 Tenn. (8 Cates), 294, 95 S. W. 1028; *Cannon* v. *Mathes,* 8 Heisk. (55 Tenn.), 519; *Frazier* v. *Railroad,* 88 Tenn. (4 Pickle), 140, 12 S. W., 537; *State* v. *Yardley,* 95 Tenn. (11 Pickle), 546, 32 S. W., 481, 34 L. R. A., 656; *Ryan* v. *Terminal Co.,* 102 Tenn. (18 Pickle), 128, 50 S. W., 744, 45 L. R. A., 303; *State* v. *Brown,* 103 Tenn. (19 Pickle), 450, 53 S. W., 727; *Condon* v. *Maloney* 108 Tenn. (24 Pickle), 83, 65 S. W., 871; *Furnace Co.* v. *Railroad,* 113 Tenn. (5 Cates), 728, 87 S. W. 1016; *Knoxville* v. *Gass,* 119 Tenn. (11 Cates), 438, 104 S. W., 1084; *State ex rel.* v. *Hamby,* 114 Tenn. (6 Cates), 363, 84 S. W., 622; *Rhinehart* v. *State,* 121 Tenn. (13 Cates), 420, 117 S. W., 508, 17 Ann. Cas., 254; *Scott* v. *Marley,* 124 Tenn. (16 Cates),

388, 137 S. W., 492; *Home Tel. Co.* v. *People's Tel. Co.,* 125 Tenn., 270, 141 S. W., 845, 43 L. R. A. (N. S.), 550.

It is next said that the act is class legislation, and, as such, is inhibited by section 8 of article 1, and by section 8 of article 11, of the Constitution of the State, and the fourteenth amendment of the Constitution of the United States. This insistence rests on fallacious premises. It assumes that the second section of the act conferred a privilege on the ten or more citizens and freeholders of the county who are by that section authorized to file a petition in the name of the State, seeking to abate a nuisance named in the first section of the act, and that another privilege is conferred on the aforesaid ten citizens and freeholders, in that they are allowed by the third section of the act to file such petition after having given bond conditioned to pay all costs and damages, in the event the court trying the cause shall find that the proceeding was instituted without probable cause, while, on the other hand, it is said that all other litigants procuring injunctions in all other cases must execute a bond in such sum as the chancellor or judge may order, conditioned to comply with the orders and decrees of the court and to pay such damages as may be awarded or recovered for wrongfully suing out such attachment or injunction. And it is again insisted that the proceedings authorized by the act, both as against the principal and as against the owner of the building in which the nui-

sance may be conducted, amount to the deprivation of property without due process of law.

An answer to the foregoing insistence is that, in the first place, no privilege or immunity is conferred upon the ten citizens and freeholders.    They are a mere agency for the State, authorized by the act in question to set in motion the proceeding for the abatement of a public nuisance named in the first section of the act, and the authority conferred upon them by the act is not a privilege or immunity, within the meaning of the Constitution, but, on the contrary, a duty which they, as citizens, may assume for the public good.    If the ten or more citizens and freeholders should act under the authority so conferred, it would be an exercise of the police power of the State.    Indeed, the lawmaking body, in the passage of the act, was within the domain of the police power of the State, and it has long been settled that much liberality of classification is to be allowed in the exercise of the police power.    *Webster* v. *State,* 110 Tenn. (2 Cates), 491, 82 S. W., 179; *Kirk* v. *State,* 126 Tenn. (18 Cates), 7, 13, 14, 150 S. W., 83, Ann. Cas., 1913D, 239; *State* v. *Mill Co.,* 123 Tenn. (15 Cates), 399, 131 S. W., 867, Ann. Cas., 1912C, 248; *Motlow* v. *State,* 125 Tenn. (17 Cates), 547, 145 S. W., 177; *Debardelaben* v. *State,* 99 Tenn. (15 Pickle), 649, 42 S. W., 684; *Brinkley* v. *State,* 125 Tenn. (17 Cates), 371, 143 S. W., 1120.

Nor can it be doubted that the lawmaking power of the State may, within constitutional limits, prescribe such an agency as is provided for in this act to repre-

sent the interest of the public in setting in motion such a law as this. *Carlton* v. *Rugg,* 149 Mass., 550, 22 N. E., 55, 5 L. R. A., 195, 14 Am. St. Rep., 446; *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205.

The insistence that the act violates the fourteenth amendment of the Constitution of the United States is not well made. The act is an exercise of the police power of the state, and there is no such arbitrary classification or disregard of the rights of property, either so far as the principals in the commission of the nuisance are concerned or the owner of the building, as to invalidate the act. *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205; *Kidd* v. *Pearson,* 128 U. S., 1, 9 Sup. Ct., 6, 32 L. Ed., 346; *Eilenbecker* v. *District Court,* 134 U. S., 31, 10 Sup. Ct., 424, 33 L. Ed., 801.

The principles announced in *City of Memphis* v. *Fisher,* 9 Baxt. (68 Tenn.), 240, and *Malone* v. *Williams,* 118 Tenn. (10 Cates), 431, 103 S. W., 798, 121 Am. St. Rep., 1002, do not apply where the action in which the bond is required to be executed is one to which the state is a party.

"The state shall commence and prosecute suits according to the laws of the land, as in cases between individuals, except that no security shall, in such case, be required." Section 4506, Shan. Code.

The suit authorized to be brought by the ten citizens and freeholders under the act in question would be the

State's suit brought in its interest, and for the benefit of its citizens.

It is insisted in the third place that the act in question singles out certain public nuisances and makes drastic provisions with respect thereto, whereas no such provisions are made with respect to a large number of other acts and things declared by statute to be public nuisances. This was a matter, however, resting within the discretion and judgment of the lawmaking body in the exercise of the police power of the State, and there is no such arbitrary classification made by the act in question as to invalidate it. *Motlow* v. *State,* 125 Tenn. (17 Cates), 547, 145 S. W., 177.

It is a mistake to suppose that the act in question undertook to abate certain public nuisances before conviction, as insisted. The purpose of the act is merely to restrain the commission of the nuisance until full hearing and judicial determination of the guilt or innocence of the accused, and to abate only in the event of guilt. The Legislature, in order to prevent fraud and to make the violation of the law more difficult, may forbid acts which in themselves are harmless. *Kirk* v. *State,* 126 Tenn. (18 Cates), 16, 150 S. W., 83, Ann. Cas., 1913D, 239; *State* v. *Mill Co.,* 123 Tenn. (15 Cates), 399, 131 S. W., 867, Ann. Cas., 1912C, 248; *Motlow* v. *State,* 125 Tenn. (17 Cates), 547, 145 S. W., 177.

It is next said that the act in question authorizes a taking of property without due process of law, in violation of section 8, art. 1, of the Constitution of the

State, and of the fourteenth amendment of the Constitution of the United States. This insistence is built upon the assumption that the State, as a litigant in a civil suit, is authorized by the act to abate a nuisance without incurring liability, and to interfere with the citizen as to his liberty and property rights, and to close the house where the business is conducted under preliminary injunction, whether the owner be a party to the proceeding or not.

The foregoing assumption as to the real character of the proceeding authorized by the act in question is manifestly erroneous. The suit authorized by the act is quasi criminal in character, and is a clear and distinct exercise of the police power of the State. We think upon a full examination of the act that the rights of the owner of the building, as guaranteed by the fourteenth amendment of the Constitution of the United States, are not violated by anything authorized to be done by the act. It is true that the building of the owner may be ordered closed under a preliminary injunction, and before final hearing of the case, but the State has a right, in the exercise of its police power, to protect its citizens from injury or harm by the closing of any building, where the owner, in violation of law, is permitting it to be used as an agency in the conduct of a nuisance. An author of great learning, speaking to this subject, says:

"Perhaps there is no instance in which the power of the legislature to make such regulations as may destroy the value of property without compensation to

the owner appears in a more striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the legislature then steps in, and by an enactment based on general reasons of public util-ity, annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that for purposes of sale becomes a criminal offense, and without any change whatever in his conduct or employment, the merchant of yesterday becomes the criminal of to-day, and the very building in which he lives and conducts the business which to that moment was lawful becomes the subject of legal proceedings, if the statute shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but, whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom." Cooley's Const. Lim. (7th Ed.), p. 855.

Another insistence is that the act violates sections 1 and 2, art. 2, of the Constitution of the State, in that, as said, the legislature undertook in the passage of the act to assume certain judicial functions, and to exercise rights belonging exclusively to the courts. This insistence, however, is not sustained upon an examination of the act. Its first section defines nuisances, which it is the general purpose of the act to abate. That section provides that the conducting, maintaining, carrying on, or engaging in the sale of intoxicating

liquors, the keeping of a bawdy or assignation house, or the running, operating, or maintaining of a gambling house, in violation of the laws of this State, in any building, structure, or place within this State, and all means, appliances, fixtures, appurtenances, materials, and supplies used for the purpose of maintaining or carrying on of such unlawful business, are declared to be public nuisances, and may be abated under the provisions of this act. The second section of the act confers jurisdiction on the chancery, circuit, and criminal courts of the State to abate the public nuisances defined in the first section of the act; and the second section further outlines the proceeding by which such nuisances may be abated; that is to say, the proceeding is to be begun by petition in the name of the State, upon the relation of the attorney-general, or any district attorney-general of the State or any city or county attorney, or without the concurrence of any such officers, upon the relation of ten or more citizens and freeholders of the county wherein such nuisance may exist.

The third section of the act imposes upon the judges or chancellors the duty of passing upon the amount of the bond where the bill or petition is filed by citizens and freeholders, and prescribes the condition of the bond in that event. This section also provides that no bond for costs or damages shall be required, where the proceeding is instigated by, or on the relation of, the attorney-general or district attorney for the State, or a county or a city attorney. To the judges or chan-

cellors section 3 commits, as already stated, the judicial function of passing on the amount of the bond, and also of determining whether the proceeding was instituted with or without probable cause, in the event of an unsuccessful petition.

By the fourth section it is made the duty of the judge or chancellor, upon the presentation of a bill alleging the existence of the nuisance, to award a temporary writ of injunction. Manifestly this section does not take away from the judge or chancellor the judicial power to pass upon the sufficiency of the averments of the bill and of its proper verification under the practice in courts of chancery; for the fifth section of the act provides that proceedings under it, whether in the chancery, circuit, or criminal courts, shall be conducted in accordance with the procedure of courts of chancery, where not otherwise expressly provided in the act, and this fifth section confers upon all of said courts having cognizance of such proceedings the full jurisdiction and powers of courts of equity in respect of such proceedings. Therefore, we think it must always be a judicial question whether the bill framed under this act is properly verified or otherwise complies with the practice of courts of chancery in respect of securing the issuance of writs of injunction, except where the practice of those courts has been changed in some respect by the terms or provisions of the act in question.

Next, under section 4, the judge or chancellor is required to exercise the judicial function, and to be sat-

isfied by evidence in the form of a due and proper veri-
fication of the bill or petition, under oath, or of affida-
vits, depositions, oral testimony, or otherwise, as the
complainants or petitioners may elect, that the allega-
tions of such bill or petition are true. Here, certainly,
there was no usurpation of the judicial function. Upon
its appearing to the satisfaction of the judge or chan-
cellor by evidence of the character above referred to
that the act has been violated, he is called upon to
exercise the judicial function of awarding a tempo-
rary writ of injunction. However, it was evidently the
purpose of the legislature to prevent the defendant or
defendants from wearing out the proceeding by contin-
uing the hearing before the judge or chancellor upon
the application for a temporary writ of injunction from
time to time; and therefore the fourth section of the
act provides that, if the application be continued at the
instance of the defendant or defendants, that the tem-
porary writ as prayed for shall be granted as a mat-
ter of course, and, when granted, shall be binding upon
the defendant or defendants throughout the county
until modified or set aside by the court, judge, or chan-
cellor having cognizance of the case, and that any vio-
lation thereof by the defendants, or upon their pro-
curement, shall be a contempt of court, and punished
as in the act provided.

This portion of the act merely prescribes a rule of
practice well within the domain of proper legislation.
The fifth section of the act provides that proceedings
under it shall be triable at the first term after due no-

tice or service of process, and that proceedings under the act shall be given precedence in the chancery and circuit courts over all other cases.

The act contemplates the performance of a judicial function by the judge or chancellor before whom the case may be pending, in the event a dismissal of the proceeding shall be attempted. The act places it beyond the power of the parties to voluntarily dismiss such a proceeding, and within the power of the court to prevent the dismissal of the proceeding, and to require it to be proceeded with by substituting another relator or relators, willing to act as such, either with or without bond at the court's discretion.

By the sixth section the duty is placed upon the judge or chancellor to order an abatement, if, upon the trial, the existence of the nuisance has been established, and to direct by judgment or decree a removal from the building where the nuisance has been maintained or exists of all appliances, fixtures, etc., used for the purpose of carrying on the unlawful business, and of directing the sale of such portion thereof as may lawfully be sold, on such terms as the court may order, and the payment of the proceeds into court, to be applied to costs or paid over to the owner, and the destruction of such portion thereof, if any, as cannot be lawfully sold within this State.

The act contemplates other exercises of the judicial function in plain terms. We think the act does not present an unreasonable or unauthorized invasion of the judicial department by the legislative department.

*Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct. 273, 31 L. Ed., 205; *Kansas* v. *Ziebold,* Id.; *Eilenbecker* v. *District Court,* 134 U. S., 31, 10 Sup. Ct., 424, 33 L. Ed., 801.

In *Mugler* v. *Kansas,* supra, the Supreme Court of the United States sustained an act passed by the legislature of the State of Kansas in 1885, which declared all places where intoxicating liquors were manufactured, sold, bartered, or given away, in violation of the provisions of the act, or where intoxicating liquors were kept for sale, barter, or deliver, in violation of the act, to be a common nuisance, and provided that, upon the judgment of any court having jurisdiction finding such place to be a nuisance, that the sheriff should be directed to shut up and abate such place by taking possession thereof and by destroying all intoxicating liquors found therein, together with all signs, screens, bars, bottles, glasses and other property used in keeping and maintaining such nuisance, and that the owner or keeper thereof, upon conviction, should be adjudged guilty and punished as prescribed by the act. The attorney-general, county attorney, or any citizen of the county was by the act authorized to maintain an action in the name of the State to abate and perpetually enjoin the nuisance, and the injunction was authorized to be granted at the commencement of the action without bond, and it was provided that any person violating the terms of any injunction granted in such proceeding should be punished as for contempt, as prescribed in the act, by fine or imprisonment.

Statutes in various states similar to the one under consideration in this case, providing for the removal and sale or destruction of liquors, vessels, and implements of the trade, and the closing up of the building, are referred to in Black on Intoxicating Liquors, as follows in section 338: Rev. St. Me., ch. 27; Rev. Laws Vt., sec. 3834; St. Mass. 1887, ch. 380, Sec. 1; Ohio Act May 1, 1854, Sec. 4 (S. & C. 1431); Code W. Va. 1887, ch. 32, Sec. 18; Laws N. H. 1887, ch. 77, Secs. 1, 2; Laws R. I. 1887, ch. 634, Sec. 14; McClain's Code, Iowa, 1888, Secs. 1543, 2389; Comp. Laws Kan., Sec. 2299; Laws Kan. 1887, p. 233.

The final insistence by the demurrants is that the act in question was not passed as required by section 18 of article 2 of the Constitution of the State, which provides, so far as material to the present question, as follows:

"Every bill shall be read once, on three different days, and be passed each time in the house, where it originated, before transmission to the other. No bill shall become a law until it shall have been read and passed, on three different days in each house," etc.

The bill in question originated in the senate as senate bill No. 6. It was introduced in the senate at the morning session of that body on October 14, 1913, and on that day, after its introduction, it was passed by that body on its first reading. On the same day, October 14, 1913, at the night session of the house, house bill No. 3 was introduced and passed its first reading. The title to each of these bills was identical, and each of

them were identical in terms. Each of them was read and passed on its second reading in the house in which each had originated on October 15, 1913. On October 16, 1913, senate bill No. 6 was passed by that body upon its third reading, and, after its passage on its third reading in the senate it was duly transmitted to the house on the same day it passed the senate on its third reading, to wit, October 16, 1913. When senate bill No. 6 reached the house on October 16, 1913, the house substituted senate bill No. 6 for house bill No. 3, and thereupon the substituted bill, as senate bill No. 6, passed its third and final reading in the house.

So far as the question of the constitutional passage of this bill is concerned, it is controlled by the case of *Archibald* v. *Clark,* 112 Tenn. (4 Cates), 532, 82 S. W., 310. It was said in that case:

"Where the senate bill and the house bill are the same in tenor and substance in their caption and body, and the house bill duly passed by the house is transmitted to the senate after the senate bill had duly passed its two readings, and thereupon the house bill is substituted for the senate bill and read and passed in the senate, the law is constitutionally enacted, and the constitutional requirements (article 2, Sec. 18), that a bill shall be read and passed in each house on three separate days is complied with."

See, also, *Southern Railway Co.* v. *Memphis,* 126 Tenn. (18 Cates), 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153.

It is, however, insisted that, under article 2, section 18, of the constitution, the power did not reside in the senate to transmit senate bill No. 6 to the house on October 16, 1913, and that such power did not exist in the senate until October 17, 1913. This insistence is based upon the requirement of section 18, article 2, that every bill shall be read once on three different days, and be passed each time in the house where it originated before transmission to the other. The argument is that the day of final passage in the senate for senate bill No. 6 and the day of its transmission to the house could not be the same day, because it is insisted that the above language means that three full days shall have elapsed from the day of the original introduction of the bill before the day of transmission. We do not admit this insistence to be correct. We think the language of the constitution above quoted means that before the bill is transmitted by the house in which it originated to the other house, that the bill shall be read once on three different days, and be passed each time it is read in the house where it originated, and no bill shall become a law until it shall have been read and passed on three different days in each house.

In respect of notice to the defendant or defendants of the hearing of the application for the writ, the majority of this court holds that the act does not contemplate a hearing of the application nor require the giving of any notice of the application for the writ when the bill or petition is filed by ten or more citizens and freeholders, but that the act does require such notice

where the bill or petition is filed on the relation of the attorney-general, or any other officer named in the second section of the act; but I do not concur on this point; I agree with the chancellors.

We have disposed of each insistence made by the demurrants; we have also, in our construction of the bill, heretofore disposed of the insistence of the relator.

It results from the views expressed that each and all of the assignments of error made in this court by demurrants are overruled, and the decree appealed from as modified hereby is affirmed; demurrants will pay the costs.