STATE OF TENNESSEE ex rel. LODGE EVANS, District Attorney General, Appellee and Respondent, v. MR. AND MRS. CHARLES V. CALDWELL, Appellants and Petitioners.—381 S.W.(2d) 553.

Eastern Section.

Heard by Western Section, at Knoxville. April 23, 1964.

Certiorari Denied by Supreme Court July 15, 1964.

C. C. Street, Elizabethton, for appellants.

Lodge Evans, District Attorney General, Elizabethton, for appellee.

BEJACH, J. This cause comes to the Court of Appeals, Eastern Section, by appeal from the Criminal Court of Washington County, and also by petition for

certiorari and supersedeas, filed by Mr. and Mrs. Charles V. Caldwell seeking to review and supersede the judgment of the Criminal Court of Washington County, Tennessee, of June 3, 1963 which adjudged their residence in Johnson City, Tennessee, to be a nuisance and ordered same to be padlocked. This cause was formerly in the Supreme Court, but that Court ordered it transferred to the Court of Appeals. In this opinion, the parties will be referred to as petitioners and respondent or called by their respective names, the term petitioners being applied to appellants' petition for certiorari and super-. sedeas. The State was also a petitioner in the lower court.

Petitioner, Charles V. Caldwell, was indicted in the Criminal Court of Washington County on a charge of maintaining his home in such manner that it was a public nuisance. In addition, a petition of the State of Tennessee on the relation of Lodge Evans, District Attorney General, was filed in the same Court against both Mr. and Mrs. Charles V. Caldwell, seeking to declare their home to be a public nuisance and to have same abated by padlocking of said residence. By agreement, the two causes were heard together, with the same testimony, or at least parts thereof, heard by the court and the jury trying the indictment, with additional testimony heard by the court alone on the petition for padlocking. The trial on the indictment was before the court and a jury, and the trial of the petition for padlocking was before the court, without a jury. The same testimony was heard, however, in both trials, although in the padlocking trial two additional witnesses were heard by the court, after the jury had retired. The jury returned a verdict of not guilty on the indictment, and, consequently we are not concerned with that case. The trial judge, Hon. Oris D. Hyder, however, sustained the petition on relation of the

District Attorney General, and ordered the home of Mr. and Mrs. Caldwell padlocked. Petitioners appealed, and also filed a petition for certiorari and supersedeas. There had been previously granted a temporary injunction restraining Mr. and Mrs. Caldwell from operating their home as a nuisance, but that injunction had not been made permanent and no citation for contempt of court for violation of said injunction had been issued.

So far as the record before us indicates, no writ of certiorari nor writ of supersedeas has been issued.

In this Court, as appellants, and as petitioners for the writs of certiorari and supersedeas, petitioners have filed four assignments of error which are as follows:

## "ERROR NO. I

"The evidence preponderates against the judgment of the court in ordering the petitioners' residence padlocked. This error is based upon grounds 1 and 3 of the motion for a new trial.

## "ERROR NO. II

"The judgment is contrary to the law and the evidence.

## "ERROR NO. III

"Padlocking petitioners' residence amounts to a confiscation or forfeiture of their property without compensation and without due process of law, and is violative of Article I, Sections 8 and 21 of the Constitution of Tennessee.

## "ERROR NO. IV

"Padlocking petitioners' residence and depriving them of their home amounts to confiscation or for-

feiture of their property without due process of law and without compensation, and is violative of the 5th and 14th Amendments to the Constitution of the United States.

"The court erred in overruling petitioners' motion for a new trial by reason of a manifest errors enumerated above."

■ Inasmuch as there was a verdict of not guilty in the criminal case against Mr. and Mrs. Caldwell, this Court is concerned only with the proceeding involved in the case of the State of Tennessee ex rel. Hon. Lodge Evans, District Attorney General, against Mr. and Mrs. Caldwell for abatement of an alleged nuisance under provisions of Sections 23-301—23-316, T.C.A. In that aspect of the situation, the cause comes to us under the provisions of Section 27-303 T.C.A., as if it were an equity case appealed to this Court, with a presumption of the correctness of the lower court's judgment or decree, unless the preponderance of the evidence is to the contrary. Black et al. v. State ex rel. District Attorney General, 130 Tenn. 529, 172 S.W. 281.

Petitioners' assignments of error present two questions for disposition by this Court, viz., 1. Whether or not the preponderance of the evidence is contrary to the judgment or decree of the lower court, and 2. Whether or not the action of the court in entering the decree, which orders petitioners' home padlocked, violates either Article I, Sections 8 and 21 of the Constitution of Tennessee, or the 5th and 14th Amendments to the Constitution of the United States. The first of these questions is presented by Assignments of Error Nos. I and II and the second by Assignments of Error Nos. III and IV. We will dispose of the second question first.

■ The question of whether or not the judgment or decree of the court in this case violates either the Constitution of Tennessee or the Constitution of the United States is, in our opinion, settled adversely to the contention of petitioners by the case of State ex rel. Estes v. Persica, 130 Tenn. 48, 168 S.W. 1056.

From the opinion of the Supreme Court in that case, written by Mr. Justice Buchanan, we quote as follows:

"It is next said that the act is class legislation, and, as such, is inhibited by section 8 of article 1, and by section 8 of article 11, of the Constitution of the state, and the fourteenth amendment of the Constitution of the United States. This insistence rests on fallacious premises.

\* \* \* \* \* \*

"The insistence that the act violates the fourteenth amendment of the Constitution of the United States is not well made. The act is an exercise of the police power of the state, and there is no such arbitrary classification or disregard of the rights of property, either so far as the principals in the commission of the nuisance are concerned or the owner of the building, as to invalidate the act. Mugler v. Kansas, 123 U.S. 623, 8 Sup.Ct. 273, 31 L.Ed. 205; Kidd v. Pearson, 128 U.S. 1, 9 Sup.Ct. 6, 32 L.Ed. 346; Eilenbecker v. District Court, 134 U.S. 31, 10 Sup.Ct. 424, 33 L.Ed. 801." State ex rel. Estes v. Persica, 130 Tenn. 56, 58, 168 S.W. 1058, 1059.

■ In State ex rel. Estes v. Persica, the constitutionality of Chapter 2, Public Acts of Second Extra Session, 1913, known as the Nuisance Act, (carried forward into secs. 23-301—23-316, T.C.A.) was involved. This Act

authorizes the abatement of public nuisances therein defined, including the unlawful sale of intoxicating liquors, by process of injunction, and authorizes, in proper cases, the padlocking of places where intoxicating liquors are unlawfully sold. The property involved in the Persica case was a place of business, and counsel for petitioners contend that padlocking cannot properly be used in the case of a residence. We have found no reported case where a private residence was ordered to be padlockd, and so such case has been pointed out to us; but, we find no valid reason for distinguishing the right of padlocking on that ground. In our opinion, even a private residence could be properly ordered padlocked, if the proof clearly established that intoxicating liquor was being illegally sold at such residence, and that padlocking of such residence was necessary to prevent a continuation of sales there. The proof of sales ought, perhaps, in such case, to be stronger than if sales at a place of business were involved. In the instant case, however, there is no proof of illegal sales of intoxicating liquor having been made on petitioners' premises, and, as we shall point out in disposing of Assignments of Error I and II, the preponderance of the evidence is to the contrary.

In addition to relying on the provisions of the Nuisance Act, Sections 23-301—23-316 T.C.A., respondent relies on Section 39-2901 T.C.A., which, among other provisions, contains the following:

"It is a public nuisance:

"(4) To maintain houses of ill fame, kept for the purpose of prostitution and lewdness, gambling houses, or houses where drunkenness, quarreling, fighting, or

breaches of the peace are carried on or permitted, to the disturbance of others."

■ In our opinion, the provisions of this Code Section are merely cumulative to the provisions of Sections 23-301—23-316 T.C.A.

Assignments of Error III and IV will be overruled.

We next take up Assignments of Error I and II which present the question of whether or not the evidence preponderates against the judgment or decree of the lower court. In order to dispose of this question, it will be necessary to review the evidence.

Scott Lawson, an employee of J. E. Green Construction Co., testified that he lived at 45½ Orleans Street in Johnson City, Washington County, Tenn., about 500 feet from the residence of petitioners on top of a hill at a deadend street or alley known as Dean Street, with only one other house located on this street after passing Orleans Street, but that there are numerous other houses in the general locality, including the Clifton View Baptist Church, which is also about 500 feet from the home of petitioners. This witness testified that he had frequently seen people coming from the Caldwell house in an intoxicated condition, and that a continuous stream of noisy traffic going to and from the Caldwell house disturbed church services at the Clifton View Baptist Church. He was, however, unable to say that the disturbances or drinking were caused by anyone going to or from the home of petitioners.

The Reverend B. M. Canup, minister of the Clifton View Baptist Church, testified that his church is 400 to 500 feet from the petitioners' home, and that he had heard considerable noise on the road leading towards

their home, and that such noise and traffic had disturbed services at his church. He had never been to or past petitioners' house.

Mrs. Robert Giles testified that she lived near the Caldwell home, and that she had frequently seen people come from the Caldwell house who were in an intoxicated condition, and that she had seen a fight on the road right below the Caldwell house. She could not state positively, however, that the people whom she had seen had been in or to the Caldwell home.

Mrs. Charles Hubbard testified that she lived near the Caldwell home, and that she frequently saw and was disturbed by the noisy traffic going up the hill towards the Caldwell house, but that there were other houses in the area and she could not say positively that these people went to the petitioners' home.

Larry Hubbard, 12 years of age, testified that, on one occasion, he and Bobby Babb had sold liquor bottles to Mrs. Caldwell, that they received 2½ cents each for half pint bottles, and a nickel each for pint bottles, and that Mrs. Caldwell paid them $2.09.

Bobby Kenneth Babb, aged 16, testified, in general, to the same effect as Larry Hubbard, except that he could not and did not identify Mrs. Caldwell. He said that the amount received for the bottles sold was $1.10 and that they received 2½ cents each for the bottles.

Mrs. Angie Simerly, a widow who lived at 49 Orleans Street in the same block with the Clifton View Baptist Church and about two blocks to two and a half blocks from the Caldwell home, testified that she had seen cars coming down the hill and back up, with intoxicated people coming back.

.. Guy Williams, self employed, who resided about 150 feet from the Clifton View Baptist Church, and about 1000 feet from the Charles Caldwell house, testified that he had seen a lot of traffic going to and from the Caldwell home, that he had seen a number of people coming away in a state of intoxication.

The Reverend B. M. Canup, being recalled to the stand, testified that there is only one store in the vicinity of the Caldwell home, and that he had never been to the top of the hill where that home is located.

The above was all of the evidence introduced before the court and jury on the trial of the indictment; but, after the trial judge had charged the jury, and the jury had retired, the witness Scott Lawson was recalled to the stand where he testified that the general reputation in the community was that intoxicating liquors were being sold in and at the Caldwell house. Also, Mr. Tommy Dillow, the Criminal Court Clerk of Washington County, testified that in 1959, a temporary injunction had been issued by the Criminal Court of Washington County enjoining Mr. and Mrs. Charles V. Caldwell from selling and possessing for sale intoxicating liquors upon their premises, and a certified copy of such temporary injunction was introduced in evidence. He testified that the injunction had never been made permanent, and that no citation for contempt of court had been issued against either Mr. or Mrs. Caldwell.

██ In our opinion, the evidence summarized above, including that offered before the trial judge outside the presence of the jury, was wholly insufficient for conviction of Mr. and Mrs. Caldwell for contempt of court, consisting of violation of said injunction, and, consequently, wholly inadequate to justify a judgment for

padlocking their residence. We recognize that proof of reputation is made competent under the provisions of the "Nuisance Act" (secs. 23-301—23-316 T.C.A.), as tending to show violation of the injunction. But in our opinion, proof of bad reputation for violation of liquor laws is, by itself, inadequate to sustain a finding of fact that illegal sales of intoxicating liquor had been made; and, without proof of unlawful sales therein, petitioners' residence should not, in our opinion, have been ordered to be padlocked. In our opinion, the record discloses no proof of actual sales of intoxicating liquor made by petitioners at their residence, and, consequently, the judgment ordering their residence to be padlocked was not justified by the proof. The proof offered might have been sufficient to justify making the temporary injunction permanent, but not sufficient to sustain the judgment for padlocking of petitioners' residence.

We recognize that, on the trial of the indictment, proof of guilt beyond a reasonable doubt was required for a conviction, whereas, for the purpose of sustaining the State's petition for the abatement of an alleged nuisance merely a preponderance of the evidence was required. Even so, where the drastic remedy of padlocking the residence of petitioners was applied for, such proof must be considered as inadequate. Even the trial judge, preliminary to pronouncing his judgment, indicated that he considered padlocking to be a very drastic remedy. From his remarks made at the time of pronouncing judgment, we quote as follows:

"All right. Well, as I have said before, I certainly feel that to padlock a residence is a last resort on the part of the court to abate a nuisance. In this case, I have a clear recollection of hearing this case before,

and certainly it's my recollection that we hoped that this condition would be cleared up in that neighborhood by action less than a padlock order.''

Our conclusion is that Assignments of Error I and II should be sustained, and the State's petition for abatement of the alleged nuisance by means of padlocking of the residence of Mr. and Mrs. Charles V. Caldwell, dismissed. Inasmuch, however, as a temporary injunction has heretofore been granted in this cause, same should be remanded to the Criminal Court of Washington County for further and additional proceedings therein, such as the hearing of an application to make the temporary injunction permanent, or for any other and additional efforts, on stronger proof than that contained in the present record, to have the alleged nuisance abated, or for any other relief in said cause not inconsistent with this opinion.

The costs of the cause will be adjudged against the State of Tennessee.

Avery, P.J., (W.S.), dissents.

Carney, J., concurs.

AVERY, P.J., (W.S.), (dissenting).

The record in this case came to this Court from the Supreme Court of the State of Tennessee. The record was filed in the Supreme Court of the Eastern Section of this State on October 3, 1963.

On November 14, 1963, the Supreme Court entered an order, saying:

"In this cause it appearing to the Court that the appeal prayed and granted in this cause should have been to the Court of Appeals instead of this Court.

It is therefore ordered by the Court that this cause be and is stricken from the docket of this Court and placed on the docket of the Court of Appeals."

This Western Section of the Court of Appeals while sitting in the Eastern Section on the 12th day of December 1963, was advised by the Clerk that parties in this proceeding had agreed for the hearing of the entire matter involved in the civil case to be had on briefs, and in the regular order of assignment, this record was assigned to Judge L. D. Bejach for the preparation of an opinion for this Court.

The record did not get to the Supreme Court upon appeal from the judgment of the lower Court. It was filed in that Court under the style, State of Tennessee, Ex Rel. Lodge Evans, District Attorney General v. Mr. and Mrs. Charles V. Caldwell, in the Criminal Court of Washington County, Tennessee, and counsel for the petitioners have styled their document as follows:

"PETITION OF MR. AND MRS. CHARLES V. CALDWELL FOR WRIT OF CERTIORARI TO REVIEW THE JUDGMENT OF THE CRIMINAL COURT OF WASHINGTON COUNTY, TENNESSEE, AND FOR WRIT OF SUPERSEDEAS TO SUPERSEDE THE SAME PENDING REVIEW."

The petitioners, Mr. and Mrs. Charles V. Caldwell, were parties to a padlock proceeding filed in the Criminal Court of Washington County, Tennessee, and at the time when they had been indicted under Section 23-301 et seq. T.C.A. charging them with the operation of a nuisance.

Prior thereto both defendants, Mr. and Mrs. Charles V. Caldwell, had been enjoined from selling whiskey etc. at the involved location in a prior proceeding or hearing.

On the trial of the indictment, which was against Mr. Charles V. Caldwell only, and not against his wife, there was an acquittal. The padlock proceedings ran against both Mr. Caldwell and Mrs. Caldwell. The criminal case against Mr. Caldwell and the padlock proceedings against both Mr. and Mrs. Caldwell was heard before the Honorable Oris D. Hyder, Criminal Judge for said Criminal Circuit, at the same time, the record showing that the padlock proceedings against both Mr. and Mrs. Caldwell was heard before the Judge only, while the criminal indictment against Mr. Caldwell was tried to the Court and a jury.

Counsel for the parties agreed that the cases would be heard on one record and as provided by law with respect to the padlock proceedings and the criminal proceedings, and that the Judge himself would determine the padlock proceedings, while the criminal proceedings against only Mr. Caldwell would be determined by a jury.

The bill of exceptions show that in the criminal case there was a verdict of not guilty, and in the civil padlock suit after the proof was introduced on the criminal issue and the civil issue at the same time, and concluded as to the criminal issue, the Court then heard other proof with respect to the padlock proceedings.

My view of this record is that it is not necessary for this Court to consider the jury verdict at all because we consider only whether the proof preponderates against the judgment of the trial Court in the civil action, while the jury had to determine whether the proof was sufficient to convict Mr. Caldwell beyond a reasonable doubt.

At conclusion of the padlock proceedings, the Court said:

"All right. Well, as I have said before, I certainly feel that to padlock a residence is a last resort on the part of the Court to abate a nuisance. In this case I have a clear recollection of hearing this case before, and certainly it's my recollection that we hoped that this condition would be cleared up in that neighborhood by action less than a padlock order."

The Court was then speaking about injunction proceedings wherein he had enjoined the sale of liquor and other disturbing features by both Mr. and Mrs. Caldwell at the particular premises involved sometime prior to this hearing. He then continued:

"It is the opinion of the Court and from the proof that I have heard here today, that the condition out there is a continuing condition, that it constitutes a nuisance in the neighborhood, and that it is further the opinion of the Court that any action less than a padlock of this property would be ineffective and it's my opinion that it should be padlocked to abate this nuisance."

After that there was much discussion between the Court and counsel. Attorney for the defendants, Mr. and Mrs. Caldwell, was asking for ninety days before the padlock order would be made effective, and stated they wanted to sell the property and move elsewhere if they could, and finally after much conversation back and forth between the Court and counsel the last thing that appears in this record is as follows:

"THE COURT: I'll agree to ninety days, with this provision: That if there is circumstantial evidence or direct evidence which the State produces to me, that this situation is in any way continuing out there, I'll

hear the Attorney General on making it effective immediately. Now, if there's people going up there, as the testimony is here in the past, if liquor is being sold out there, and there is a lot of traffic to and from this house, I will hear the Attorney General instanter, and if there is proof to that effect, I am going to close it then, even if it's on a week-end, and I hope you understand that, and otherwise I will make this Order to padlock it, I will give them ninety days to move out of this property, and have it closed.

"MR. MITCHELL: If your Honor, please, we respectfully save exceptions to Your Honor's ruling and draw an appropriate Order to appeal it.

"THE COURT: All right."

Then there is this statement:

"THIS IS ALL OF THE EVIDENCE INTRODUCED AND HEARD IN THE CAUSE BEFORE THE COURT, IN THE ABSENCE OF THE JURY, INCLUDING THE COURT'S DECISION ON THIS MATTER."

There is no technical record filed and nothing appearing with the record except the bill of exceptions. There are none of the pleadings below, no judgment shown to have been entered in this cause, and there is no prayer for appeal other than what is quoted hereinabove and there is no order granting appeal. The member of the Court writing this dissenting opinion, thinking perhaps that we did not have all the record filed with the Clerk, communicated by telephone with the Clerk of the Court for the Eastern Division and was informed by his Chief Deputy that no technical transcript was ever filed in that

office, and it is distinctly remembered by this Court that when this case was called on the docket the Court was informed that the record was not present in the Court, even though it was to be heard on briefs, and the Clerk forwarded this record after having procured it from some other person, to the member of this Court to whom it had been assigned.

So far as this record shows there are no pleadings, no entry of any judgment of the Court on the minutes, nor is there any judgment of the Court appearing in the record, other than just what is quoted above, which is an oral statement from the bench, and constitutes no order that can be considered by this Court. In this petition for a supersedeas it is said:

"Petitioners filed a motion for a new trial, which reads as follows:

" 'Because the judgment ordering the defendants' residence padlocked is contrary to the weight of the evidence.

" 'Because the judgment is contrary to the law and the evidence.

" 'Because there is no evidence to support the judgment.

" 'Because padlocking defendants' r e s i d e n c e amounts to a confiscation or forfeiture of their property without compensation and without due process of law, in violation of Article I, Sections 8 and 21, of the Constitution of Tennessee.

" 'Because padlocking the defendants' residence and depriving them of their home amounts to confiscation or forfeiture of their property without due

process of law and without compensation, in violation of the 5th and 14th Amendments to the Constitution of the United States'."

The petition continues to say:

"Their motion for a new trial was overruled, and they prayed and were granted an appeal to this Honorable Court, and they have filed an appeal bond. However, they are advised that they have a right to petition this Honorable Court for the writ of certiorari to bring the record speedily before the Court and for a writ of supersedeas staying the drastic judgment that their home be padlocked until the case is reviewed here."

The prayer to this petition is as follows:

"1. That a writ of certiorari issue by this Honorable Court to the Criminal Court at Jonesboro, Tennessee, directing said Court and the Clerk thereof to certify and transmit to this Honorable Court the entire record and proceedings in this case.

"2. That the judgment of the said Criminal Court be reviewed and that the error complained of be cured, and the petition dismissed.

"3. That the writ of supersedeas issue to stay all further proceedings on said judgment."

It is sworn to and there appears in the record a notice signed by counsel and addressed to the District Attorney General in which it is said:

"You are hereby notified that Mr. and Mrs. Charles V. Caldwell will, on the 10th day of August, 1963, present to the Supreme Court, at Knoxville, Tennessee, or to one of the Judges thereof, their petition for writs

of certiorari, seeking to have this case reviewed, and to have the judgment of the Criminal Court of Washington County, Tennessee, reversed and the case dismissed; and also for the writ of supersedeas to stay further action on the judgment pending the review.

This 2nd day of August, 1963."

There is attached to the petition a statement by the Attorney General that he received the notice on August 2, 1963.

On the back sheet of this document is the usual form of a fiat which is necessary issue when a writ of supersedeas is prayed for. That fiat is typed, but so far as this record shows it is entirely just a blank and was never presented to any Justice of the Supreme Court, nor to any member of the Court of Appeals of the Eastern Section of Tennessee, nor to any member of any Court of Appeals elsewhere, and thus there is no fiat shown to have authorized the issuance of certiorari or supersedeas.

There is an answer to this petition filed by the Honorable Lodge Evans, District Attorney General, First Circuit, Elizabethton, Tennessee.

The Section of the Code, T.C.A. sec. 16-308 which authorizes the issuance of a writ of supersedeas to stay a prohibitory injunction reads as follows:

"Supersedeas by judges.—The judges of the Supreme Court, or any one of them, on a proper case being made out, shall have the authority to grant the process of supersedeas to an execution, returnable to their own court, in the same manner the Supreme Court, whilst in session, can grant such process, also grant supersedeas to the execution of an interlocutory decree of an inferior court, in the cases provided for in sec. 27-103."

Thus it would appear that this petition was filed in the Supreme Court and was presented to one of the Judges at least, and there being no showing that the Judge directed the issuance of a writ of supersedeas, it is assumed that he refused to do so, for this record stayed somewhere in that Court from the time it was filed with the Supreme Court Clerk in Knoxville on October 3, 1963, until the order was entered on November 14, 1963, in which that Court said:

"In this cause it appearing to the Court that the appeal prayed and granted in this cause should have been to the Court of Appeals instead of this Court."

Then the order transmitting the record to this Court as is copied hereinbefore.

There is nothing in the record to show that a Judge or the Supreme Court as a body considered it proper to issue the writ of supersedeas, and in fact there is nothing on the minutes that indicates that it did so.

Then the question arises what authority has the Court of Appeals either to sustain the judgment of the Court or reverse the judgment of the Court below? Certainly it could not reverse a judgment of a trial Court, which judgment was not shown in the record anywhere to have been filed or entered on the minutes, and to reverse the Court below it would have to be done upon an appeal allowed and perfected to this Court by some proper entry. Of course if this Court is to supersede a judgment of a lower Court, there would have to be a judgment and entry thereof, which could be interlocutory or otherwise, shown in a technical transcript of the record, but there is none, and regardless of what the parties may have agreed among themselves, if there is any agreement about it,

which the record does not show, this Court has no jurisdiction in any case over an order of the Court below, the order of which does not show that it was ever drawn, ever entered on the minutes, or appears in the record filed in this Court at any place, whether we are considering an appeal or supersedeas proceeding. Therefore, we have no judgment before us. We have no interlocutory decree before us. We have no interlocutory order before us. All there is before this Court is the statement that was made by counsel to the Court below as shown in what is referred to as the bill of exceptions, which is the statement by Mr. Mitchell, counsel for these defendants in the padlock case:

"If Your Honor, please, we respectfully save exceptions to Your Honor's ruling and draw an appropriate Order to appeal it.

"THE COURT: All right."

In Dalton v. Dean, 22 Tenn.App. 56, 117 S.W.(2d) 973, it is expressly held by this Court and concurred in by the Supreme Court for the State of Tennessee, that this Court has no jurisdiction of any judgment of a Court below when it is not shown to have been entered on the minutes of the Court. We have cited that case many times in this Court when the record appeared to be in better condition than it is here in the instant case. In that case it is said:

"Although this Court is reluctant to raise a question not being made by attorneys for either party, yet the plight of this record presents a jurisdictional question that challenges the legal right of this Court to review this case, and therefore cannot be ignored.

\* \* \* \* \* \*

"The only judicial act of the trial court presented in this record is the judgment of the court dismissing plaintiff's suit and adjudging the costs against him. Before this Court can take jurisdiction there must appear as a part of the technical record a minute entry recording the final judgment of the trial court, the disposition of the motion for a new trial, and an appeal prayed and granted. Jurisdiction cannot be conferred by consent of the parties."

If it could be said that because the Attorney General has filed some sort of an answer to the petition for supersedeas, that such jurisdiction is waived, there would still have to be an entry of the judgment of the Court on the record in order to give this Court jurisdiction.

In Dalton v. Dean, supra, it is said:

"A recital in a bill of exceptions that an appeal has been granted is not sufficient (Sellars v. Sellars, [17 Pickle [606], 607], 101 Tenn. 606, 49 S.W. 735). Nor is a statement in an agreement of parties, in the absence of any entry or judicial grant of appeal. (Cowan v. Hatcher [Tenn.Ch.App.] 48 S.W. 328). Teasdale & Co. v. Manchester Produce Co., 104 Tenn. 267, 269, 56 S.W. 853."

Again it is said:

"The stipulation is without effect. Jurisdiction cannot be conferred by consent of parties, and this maxim applies as well to appellate jurisdiction as to original jurisdiction. Barnes v. Noel, 131 Tenn. 126, 134, 174 S.W. 276, 278."

Therefore, it appears to this member of the Court that the only thing this Court has any jurisdiction to do in the

instant case is simply to set down its order in which it is recited that in view of the fact that the record in this case does not show that the judgment of the Court sought to be superseded was ever prepared, signed by the trial Judge, entered on the minutes, and appears in no form or shape in this record, the writ of supersedeas is denied and the case is dismissed at the cost of the petitioner. There being no bond appearing in the case, the costs can not be taxed to any surety.

Thus would I dispose of the case, and so feeling, I respectfully dissent from the majority opinion.