## * SMITH v. JONES.

### (*Knoxville.* September 26, 1895.)

ANIMALS. *Liability of owner of notoriously mischievous stock defined.*

The liability of the owner of notoriously mischievous stock for all damages done by the same to inclosures or crops of others, is not conditional upon the maintenance of a lawful fence by the persons sustaining such injury.

Code construed: §§ 2249, 2251, 2252, 2253, 2255, 2256, 2257 (M. & V.); §§ 1682, 1683, 1684, 1685. 1686 (T. & S.).

Case cited: Polk v. Lane, 4 Yer., 36.

---

### FROM FENTRESS.

---

Appeal in error from Circuit Court of Fentress County. S. A. RODGERS, Judge.

JAS. A. ALLRED, D. C. YOUNG, and JNO. W. FROGGE for Smith.

S. M. TURNER, O. C. CANATSER, and SMITH & SMITH for Jones.

CALDWELL, J. This case comes, by appeal in the nature of a writ of error, from the Circuit Court of Fentress County, wherein E. S. Jones ob-

---

* The sufficiency of fences under the laws of the different States is the subject of a note to *Clarendon Land Inv. & A. Co.* v. *McClelland*, 22 L. R. A., 105.

tained verdict and judgment against John Smith for the sum of $100, as damages for the invasion of the former's field and the destruction of his corn by the latter's cattle.

The proof shows (1) that Jones owned a field of corn, which was invaded and damaged to the extent of $100 by Smith's cattle; (2) that the fence around the field was not a lawful fence, being a common rail fence less than five feet high; and, (3) that the trespassing cattle were "notoriously mischievous, and in the habit of throwing down and jumping fences," and were, by their owner, permitted to run at large.

The Court charged the jury, among other things, as follows: "If the defendant, Smith, was owner of cattle notoriously mischievous, known to be in the habit of throwing down and jumping fences, he was required by law to keep the same confined upon his own premises, so that they be not allowed to run at large, to the injury of the inclosures and crops of any other person or persons whatever; and if the jury shall find that the defendant, Smith, owned such stock, and allowed them to run at large off of his premises, and, by reason of so doing, the stock in question strayed off the premises of defendant, and broke into the field of plaintiff and destroyed the crop of plaintiff, then, in such case, the defendant would be liable, and this would be so although it may appear that the fence inclosing the field in question was a common worm, or crooked rail, fence, and less than five feet high."

Smith assigns error upon that part of the charge authorizing the jury to find for Jones although it might appear that his field of corn was inclosed by a common rail fence, less than five feet high; and, in support of that assignment, he contends that such an inclosure is not a lawful fence, and, consequently, that he is not liable for the damage done by his cattle.

To be lawful, a common rail fence must be at least five feet high. It was so provided by Section 1, Chapter 8, Acts of 1807. 1 Scott's Laws of Tenn., p. 1009; Code, § 1682. That enactment was so amended by Section 1, Chapter 139, Acts of 1875, as to reduce the requisite height of such a fence to four feet; and then the amending act of 1875 was repealed, and the original provision of the act of 1807 was restored by Sections 1 and 2, respectively, of Chapter 35, Acts of 1877. Code (M. & V.), § 2249.

By the second section of the same act of 1807, it was provided that the owner of trespassing animals shall make full satisfaction for damage done by them on the cleared and cultivated land of another person, if the fence around such land be "sufficient," and that there shall be no such liability if the fence be "insufficient." 1 Scott's Laws Tenn., p. 1010; Code, §§ 1683-4-5; Code (M. & V.), §§ 2251-2-3.

Section 2, Chapter 139, Acts of 1875, made provision for damages in lieu of that made by Sections 1683-4 of the Code, and the third section of that act, in terms, repealed those two sections of the Code.

Subsequently, the whole of said act of 1875 was re-pealed, and Sections 1683–4 of the Code were re-en-acted by Section 1, Chapter 35, Acts of 1877. New kinds of fence were introduced by Chapter 46, Acts of 1883, and by Chapter 92, Acts of 1891, but the requisite height of a common rail fence and the rule of damages for the invasion thereof were not changed thereby.

As early as 1833 this Court, in construing the Act of 1807, held that all parts of an inclosing fence must be five feet high, and that no recovery could be had for damage done by trespassing stock if such were not true, although the part the stock broke over was of the requisite height. *Polk* v. *Lane*, 4 Yer., 36. Such was the law when the present action accrued, in 1894, except as modified by an Act yet to be mentioned. The Act in ques-tion is as follows:

"SECTION 1. *Be it enacted by the General As-sembly of the State of Tennessee*, That all persons owning notoriously mischievous stock, that are known to be in the habit of throwing down or jumping fences, shall be required to keep the same confined upon their own premises, so that it be not allowed to run at large, to the injury of the inclosures or crops of any other person or persons whatever.

"SEC. 2. *Be it further enacted*, That all owners of stock shall be liable for all damages done by the same to the inclosures or crops of others, and, upon proof of the amount of such damage, and of

the character of the stock committing the trespass, recovery of said amount and costs of suit may be had before any Justice of the Peace.

"SEC. 3. *Be it further enacted,* That, to secure the payment of such damage and costs, executions shall be levied upon the stock committing the trespass, and, after ten days' notice, shall be sold to pay said amount of damages and costs." Acts 1875, Ch. 110; Code (M. & V.), ş 2255–6–7.

Clearly, this Act was intended as an exception to the general rule * established by the Act of 1807. Under that general rule, the owner of crops injured by trespassing stock could have no recovery for the damage done, unless the inclosing fence, and every part thereof, should be shown to have been full five feet high. By the exception the person whose "inclosures or crops" have been injured by "notoriously mischievous stock, that are known to be in the habit of throwing down or jumping fences," and that are "allowed to run at large," may have a recovery against the owner of such stock for all damage done by it or them, "upon proof of the amount of such damage, and of the character of the stock committing the trespass."

The Act of 1807 put all trespassing animals upon the same plane, and authorized a recovery for damage done in every case where the whole fence should appear to have been of the required height, and denied a recovery in every case where any part of the fence was not so high. By that law, the suffi-

ciency or insufficiency of the inclosure was made the test of liability or nonliability, the character of the trespassing stock being a matter of no consequence.

Under the law of 1875, the character of stock doing the damage is the test of liability or non-liability, the exact height of the inclosure not being a matter of material inquiry. The first section of this act designates a class of stock which the owner is required to confine upon his own premises, and not permit to run at large, "to the injury of the inclosures or crops of any other *person or persons whatever." The protection which the owner of such stock is required to give, is general. It embraces the inclosures and crops of all other persons, and is not confined to such other person or persons as may have a lawful fence.

The second section says that the owners of such stock "shall be liable for all damages done by" them "to the inclosures or crops of others," and then pre-scribes two things, and only two, to be proven in order that a recovery may be had for the damage done in a particular case, those two things being (1) "the amount of such damage," and (2), "the character of the stock committing the trespass." No proof as to the height of the fence is required.

The charge of the Court is correct, and the judgment is affirmed, with costs.