Railroad *v.* Tiernan.

---

## RAILROAD *v.* TIERNAN.

### (*Jackson.*    May 24, 1899.)

1. RAILROADS.  *Fencing track.*

    The fences along a railroad right of way, to meet the require-
    ments of the statute on that subject, must be up to the
    standard at all points, including those at which gates are
    maintained.  (*Post, p. 706.*)

    Act construed: Acts 1891, Ch. 101.

    Cases cited and approved: Polk *v.* Lane, 4 Yer., 36; Smith *v.*
    Jones, 95 Tenn., 342.

    Cited and distinguished: Railroad *v.* Hughes, 94 Tenn., 450.

2. SAME.  *Same.*

    The mere erection by a railroad company of a fence, which
    originally conforms to the standard fixed by the statute on
    that subject, does not afford it perpetual immunity from lia-
    bility for stock killed on the track, but to continue its im-
    munity the company is bound to exercise ordinary care to keep
    the fence, including the gates, in good repair and closed at all
    points.  (*Post, p. 707.*)

    Act construed: Acts 1891, Ch. 101.

3. SAME.  *Liability for killing stock.*

    Since the passage of the railroad " fencing Act " of 1891, it is not
    essential, in order to exonerate it from liability for the killing
    of live stock on a lawfully fenced track, that a railroad com-
    pany shall show, in addition to the fencing of its track, that it
    has complied with all the requirements for the prevention of
    accidents on unfenced tracks.  (*Post, pp. 707, 708.*)

    Act construed: Acts 1891, Ch. 101.

    Code construed: § 1574 (S.), § 1298 (M. & V.), § 1166 (T. & S.).

Railroad *v.* Tiernan.

Cases cited and approved: Railroads *v.* Crider, 91 Tenn., 489; Railroad *v.* Russell, 92 Tenn., 108; Railroad *v.* Stonecipher, 95 Tenn., 313; Smith *v.* Jones, 95 Tenn., 342.

---

FROM MADISON.

---

Appeal in error from Circuit Court of Madison County.  LEVI S. WOODS, Judge.

McCORRY & BOND for Railroad.

CARUTHERS & MALLORY for Tiernan.

CALDWELL, J.  A train of the Mobile & Ohio Railroad Co. ran upon and killed a mare and colt belonging to John Tiernan.  He sued the company for damages and obtained verdict and judgment for $100.  The company appealed in error.

At and near the place of collision the road of the company passed over the land of one Taylor. The track was fenced on both sides, and gates were put in for the convenience of Taylor, the owner of the land.  The testimony submitted to the jury was conflicting as to the character and legal sufficiency of certain portions of the fence, and it failed to show with certainty the precise point at which the mare and colt entered the inclosure.  Several objections are urged against the charge and rulings of the Court below.  All of these have been considered, and, without mentioning them in detail or

18 P— 45

stating the contentions made on either side with respect to them, we are content to give our conclusions in brief form as to the most important questions raised.

1. The trial Judge, after defining the requisites of a lawful fence, rightly instructed the jury, that, to render the inclosure legally sufficient, the gates, forming parts of it, "must be as substantial as other portions of the fence, for the purpose of keeping out stock."

Clearly, a gate that is less effective in turning away stock than the whole fence is required to be, does not meet the demands of the law. A fence, like a chain, is no stronger than its weakest part.

2. He also rightly said to the jury, that, if the proof showed that the inclosure was insufficient "at any place along, at, or near where the animals were killed, and where stock were likely to enter, then the company would be 'responsible," though the proof should not show the point at which these particular animals entered.

This instruction, like the preceding one, lays down the correct proposition that the inclosure, to meet the statutory requisites of a lawful fence, must be up to the standard at all points. It is in accord with *Polk* v. *Lane*, 4 Yer., 36, approved in *Smith* v. *Jones*, 95 Tenn., 342. The present case is not analogous to that of *Railroad* v. *Hughes*, 94 Tenn., 450, nor is the foregoing proposition inconsistent with anything said in that case.

Railroad v. Tiernan.

3. Again, the jury was rightly charged, in substance, that if a third person left one of the gates open, and the mare and colt entered through it while so open, the company would be responsible, if it knew, or by the exercise of ordinary care could have known, that the gate was open, and that it would not be responsible if it did not have, or by the exercise of ordinary care could not have had, such knowledge. This instruction is entirely correct and is fair to both sides. The mere erection of an inclosure, sufficient in the first instance, did not afford the company perpetual immunity; but, to continue its protection against liability, the company was bound to exercise ordinary care to keep the inclosure in good repair and closed at all points— the gates as well as other parts of the fence.

4. But the trial Judge committed error against the company in that part of his charge in which he said: "If the jury should be of opinion that the track was properly fenced, and that the animals got into the inclosure and upon the track and were killed, then the railroad company would be responsible for running its engine upon them, unless it can show, by a preponderance of the evidence in the case, that it used all the statutory precautions" laid down in Subsec. 4 of § 1166 of the Code (M. & V., § 1298; Shannon, § 1574), in reference to a lookout on the locomotive and the sounding of the whistle, putting down of brakes, and the employment of every possible means to stop the train when

animals appear upon the track. This instruction was erroneous, in that it imposed upon the company the burden of showing an observance of "all the statutory precautions," even though it might appear to the jury that the company at the time of the collision had its track inclosed by a lawful fence. That part of the charge relating to the observance of statutory precautions should have been omitted altogether, and the liability or nonliability of the company should have been made to turn upon the absence or presence of a lawful inclosure of the track. The "fencing act" (Ch. 101, Acts 1891) greatly modifies and in a large measure supersedes the previously existing law. *Railroads* v. *Crider*, 91 Tenn., 489; *Railroad* v. *Russell*, 92 Tenn., 108. The second section of that Act makes railroad companies absolutely liable for injury caused to live stock by moving trains upon unfenced tracks, and the third section gives them complete exoneration from liability for such injury upon fenced tracks. The nonliability in the latter case is as complete as the liability in the former. *Railroad* v. *Russell*, 92 Tenn., 111. Since the passage of that Act, proof with reference to the observance or nonobservance of the "statutory precautions" referred to is irrelevant in actions like the present one. *Ib.*, 110; *Railroad* v. *Stonecipher*, 95 Tenn., 313.

The effect of the charge of the learned Circuit Judge was to give the plaintiff the benefit of two independent remedies (one under the Code and the

Railroad *v.* Tiernan.

other under the Act of 1891) in the same action, and to allow the railroad company no escape whatever, except upon proof of full compliance with both laws at the same time. A result so unequal and partial was not contemplated by the Legislature and should not be approved by the Courts. 92 Tenn., 113, 114,

Reverse and remand for a new trial.