## STATE v. CUMBERLAND CLUB.*

### (*Knoxville.*    September Term, 1916.)

1. **STATUTES.    Enactment.**

Where the Senate and the House Bill are the same in their caption and body, and the House Bill has been passed and transmitted to Senate after the Senate Bill has passed its final readings, the substitution of the House Bill and its passage by the Senate constituted a valid enactment. (*Post, pp.* 90, 91.)

Acts cited and construed: Acts 1915, ch. 54.

Cases cited and approved: Webb v. Carter, 129 Tenn., 263; State ex rel. v. Persica, 130 Tenn., 68; Tenn. Coal, Iron & R. Co. v. Hooper, 131 Tenn., 616; Heiskell v. Knox Co., 132 Tenn., 187.

Case cited and distinguished: Archibald v. Clark, 112 Tenn., 532.

2. **STATUTES.    Enactment.    Rules of Senate.**

The Senate, having the right under Const. article 2, section 12, to make its own rules, is the judge of those rules, and all the court can do is to ascertain whether in Constitution has been complied with in the passage of an act, and cannot consider whether the rules of the Senate have been complied with. (*Post, pp.* 91-93.)

Cases cited and approved: Sweitzer v. Territory of Oklahoma, 5 Okla., 299; McDonald v. State, 80 Wis., 411; In re Ryan, 80 Wis., 414; Railroad Co. v. Gill, 54 Ark., 105; United States v. Ballin, 144 U. S., 1; Hardaway v. Lilly, 48 S. W., 712; Malone v. Williams, 118 Tenn., 438; Palmer v. Express Co., 129 Tenn., 116; State ex rel. v. Persica, 130 Tenn., 48; Bird v. State, 131 Tenn., 518; Todtenhausen v. Knox Co., 132 Tenn., 169; Hamilton Nat. Bank v. Amster, 134 Tenn., 537; Wilson v. Wilson, 134 Tenn., 697.

---

*The question of applicability of liquor laws to social clubs dispensing liquors to members, see notes in 26 L. R. A., 573; 31 L. R. A., 510; 12 L. R. A. (N. S.), 591; 20 L. R. A., (N. S.), 1095; 23 L. R. A. (N. S.), 192; 38 L. R. A. (N. S.), 101; L. R. A., 1915C, 876.

State v. Cumberland Club.

Constitution cited and construed:    Art. 2, secs. 12, 17.

3. STATUTES.    Construction.    Meaning of words.

The legislative intent is to be ascertained from a statute in connection with other statutes on the same subject, and not merely from a strict and accurate definition of the words alone.    (*Post, pp.* 93-97.)

Cases cited and approved:   Kelly v. State, 123 Tenn., 516; Motlow v. State, 125 Tenn. 560; Tenn. Club of Memphis v. Dwyer, 79 Tenn., 452; Hermitage Club v. Shelton, 104 Tenn., 101; Moriarty v. State, 122 Tenn., 440; Tenn. ex rel. v. Mountain City Club, 188 S. W., 579; State v. Fickle, 71 Tenn. 79; Gavin v. State, 81 Tenn., 162; Railroad v. Crider, 91 Tenn., 489; State v. Brown, 103 Tenn., 449; State v. McMinnville, 106 Tenn., 384; State v. Hoskins, 106 Tenn., 430; Hamilton Nat. Bank v. Amster, 134 Tenn., 537; Acklen v. Thompson, 122 Tenn., 43; State v. Whitworth, 76 Tenn., 594; Truss v. State, 81 Tenn., 311; State v. Brown, 103 Tenn. 449; Condon v. Maloney, 108 Tenn., 82; Arbuckle v. McCutcheon, 111 Tenn., 514; Memphis v. Hastings, 113 Tenn., 142; Rhinehart v. State, 121 Tenn., 420; Ransom v. Rutherford Co., 123 Tenn., 1; State ex rel. v. Schlitz Brewing Co., 104 Tenn., 715; Railroad v. Byrne, 119 Tenn., 278; State v. Hayes, 116 Tenn., 40; Saunders v. Savage, 108 Tenn., 340; Ledgerwood v. Pitts, 122 Tenn., 570

Cases cited and distinguished:   Frazer v. Railroad, 88 Tenn., 138; Cannon v. Mathes, 55 Tenn., 504.

4. STATUTES. Subject and title.   Intoxicating Liquors.

Const. article 2, section 17, providing that no bill shall become a law which embraces more than one subject expressed in the title was violated by Laws 1915, chapter 54, entitled "An act to prohibit persons, clubs,  . . .   from storing, keeping, distributing or in any way disposing of liquor containing more than one-half of one per cent. alcohol, on the premises of any  . . .   club," which, in view of the history of legislation, was intended to reach social clubs, section 1 of which made it unlawful for any club to keep any clubhouse in which any liquor, containing more than one-half of one per cent.

State v. Cumberland Club.

alcohol, is received or kept by the person in his own name or otherwise, or by the club for the purpose of use, or sale among its members, forbidding any club to use or sell any such liquors so received and kept, since the clauses forbidding the maintenance of any "other place in which any liquor . . . is received or kept by the person in his own name or otherwise . . . for the purpose of use, gift, barter, or sale as a beverage," and that providing "and no person. . . . within the state shall use, barter, sell or give away or assist in bartering, or assist in . . . selling . . . any liquor containing more than one-half of one per cent. alcohol so received or kept," were not expressed in the title. (*Post, pp.* 97-100.)

Constitution cited and construed:   Art. 2, sec. 17.

5  **CONSTITUTIONAL LAW. Party entitled to raise question. Subject and title. Interest.**

While no one has the right to attack a particular provision in a statute as unconstitutional unless it affects him personally, or unless, if the attack be sustained, the effect would be to render the entire act void, yet if the effect of a successful attack for violation of Const. article 2, section 17, providing that no bill shall become a law which embraces more than one subject expressed in its title, is to render the entire act void, any one against whom such an act is sought to be enforced may attack it on that ground, and, if successful, will be relieved of whatever burden the statute in any of its parts purports to impose on him. (*Post, pp.* 100, 101.)

Cases cited and approved:   Patton v. Chattanooga, 108 Tenn., 230; Richardson v. Young, 122 Tenn., 471.

6. **STATUTES. Subject and title. Partial invalidity.**

The subject-matter of Laws 1915, chapter 54, section, 1, forbidding the maintenance of any other place than clubs, etc., in which liquor is received or kept by a person in his own name or otherwise for use or sale, not being within its title, as required by Const. article 2, section 17, could not be cut out, where it and the other subjects of the act were interwoven

State v. Cumberland Club.

so that the portion of the act relating to clubs must also fall. (*Post, p.* 101.)

Case cited and approved: State ex rel. v. Trewhitt, 113 Tenn., 561.

FROM KNOX & HAMILTON.

Appeal from the Criminal Court of Hamilton County,—S. D. McREYNOLDS, Judge.

Appeal from the Criminal Court of Knox County. —T. A. R. NELSON, Judge.

FRANK M. THOMPSON, Attorney-General, for the State.

FRED C. HOUK and JOHN H. FRANTZ, for Cumberland Club.

W. H. CUMMINGS, FRANK S. CARDEN, GEO. D. LANCASTER and FRANK SPURLOCK, for Elks' Social Club.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

These cases were heard together, as presenting the question of the constitutionality of chapter 54, Acts 1915. In order to present the question it will be necessary to quote only the title and the first section of this act. They are as follows:

"An act to prohibit persons, clubs, associations or lodges from storing, keeping, distributing, or in any way disposing of liquor containing more than one-half of one per cent, alcohol, on the premises of any association, lodge, or club and providing penalty for the violation thereof."

"Section 1. That it shall not hereafter be lawful for any person, club, association or lodge directly or indirectly to keep or maintain by himself, itself, or by association with others, or to in any manner aid, abet or assist in maintaining any clubhouse, lodge or other place in which any liquor, containing more than one-half of one per cent. alcohol, is received or kept by the person in his own name or otherwise, or, by the association, lodge or club, for the purpose of use, gift, barter or sale as a beverage, or for distribution or division among the members of any club, association or lodge in this State, by any means whatsoever; and no person, club, association or lodge within this state shall use, barter, sell or give away, or assist in bartering, selling or giving away any liquor, containing more than one half of one per cent, alcohol, so received or kept. Any person violating the provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $50.00 nor more than $500.00 and imprisonment for a period of not less than thirty days nor more than six months."

The indictment against the Cumberland Club charges:

"That 'the Cumberland Club,' a *bona fide* social club, chartered, organized and existing under the laws of the State of Tennessee, for the exclusive purpose of social enjoyment and intercourse among its members, and having and owning its clubhouse in Knoxville, Knox county, Tenn., and also having several members, whose names are unkown to the grand jurors aforesaid, did, on the——day of June, 1915, unlawfully permit certain members of said club to receive, keep and store in its said clubhouse and premises intoxicating liquors, containing more than one-half of one per cent, alcohol, belonging to said members, and received, kept and stored by said club for the use and consumption of said members in and upon its said clubhouse and premises, and kept in individual or private lockers by said members, and not for the purpose of barter or sale as a beverage by said club or its members, in violation of chapter 54 of the Public Acts of the general assembly of Tennessee for 1915, contrary to the statute and against the peace and dignity of the State."

The indictment against the Elks' Social Club has two counts. The first count charges:

"That the Elks' Social Club, a corporation, heretofore on the 3d day of June, 1915, in the county aforesaid, did unlawfully keep and maintain a certain clubhouse, where, and in which, liquors containing more than one-half of one per cent. of alcohol were received and kept by said club for the purpose of sale

as a beverage to the individual members of such club, against the peace and dignity of the State.''

The second count charges:

''That the Elks' Social Club, a corporation, heretofore on the 3d day of June, 1915, in the county aforesaid, did unlawfully sell liquors containing more than one-half of one per cent. of alcohol from a supply of such liquors received and kept by said club in a clubhouse maintained by it against the peace and dignity of the State.''

A demurrer was filed to each of these indictments, and sustained. Thereupon an appeal was prayed in each case to this court; the first case from the criminal court of Knox county, and the second from the criminal court of Hamilton county.

Many points were made in the demurrer, but we shall consider only two of them. The first of these points is based upon the following found in the journal of the Senate; It appears from the journal that Senate Bill No. 763, having the same caption as House Bill No. 797, had already passed its third and final reading, and a motion to reconsider had gone to the table. Thereafter the senate reconsidered its action and took from the table the motion to reconsider, contrary to its rules, and over the objection of a member of the Senate, and substituted the House Bill for the Senate Bill, and passed it. It appears from the rules of the Senate that when a motion to reconsider has gone to the table no motion to reconsider shall be in order. It also appears from

a resolution of the Senate construing the rules that after a motion to reconsider has gone to the table no further action can be taken by the Senate, unless a motion is entered on the journal for reconsideration by a member who votes on the losing side.

So far as the matter of substitution is concerned the practice is well recognized in several of our cases, as expressed in the syllabus to *Archibald* v. *Clark*, 112 Tenn., 532, 82 S. W., 310, viz.:

"Where the Senate Bill and the House Bill are the same in tenor and substance in their caption and body, and the House Bill duly passed by the House is transmitted to the Senate after the Senate Bill had duly passed its two readings, and thereupon the House Bill is substituted for the Senate Bill and read and passed in the Senate, the law is constitutionally enacted, and the constitutional requirements (art. 2, section 18) that a bill shall be read and passed in each house on three separate days is complied with."

To the same effect: *Webb* v. *Carter*, 129 Tenn., 263, 165 S. W., 426; *State ex rel.* v. *Persica*, 130 Tenn., 68, 168 S. W., 1056; *Tennessee Coal, Iron & R. Co.* v. *Hooper*, 131 Tenn., 616, 175 S. W., 1146; *Heiskell* v. *Knox County*, 132 Tenn., 187, 188, 177 S. W., 483.

So far as concerns the violation of its own rules by the Senate, this cannot furnish a basis for the court's annulment of an act. The Senate has the right, under the constitution, to make its own rules (Const. art. 2, section 12), and it must be the judge of those rules. All the court can do is to ascertain whether the con-

stitution has been complied with. If this has been done, we cannot look further. The same question has arisen in other states, and has been decided in the same way. *Sweitzer* v. *Territory of Oklahoma,* 5 Okl., 299, 300, 47 Pac., 1094; *McDonald* v. *State,* 80 Wis., 411, 412, 50 N. W., 185; *In re Ryan,* 80 Wis., 414, 50 N. W., 187; *Railroad Co.* v. *Gill,* 54 Ark., 105, 106, 15 S. W., 18, 11 L. R. A., 452. To the same effect: *United States* v. *Ballin,* 144 U. S., 1, 12 Sup. Ct., 507, 36 L. Ed., 321. Mr. Lewis states the proposition in the following language:

"It is held that an act cannot be declared invalid for failure of the legislature, or of either house, to observe its own rules, and that the court will not inquire whether such rules have been observed in the passage of an act." Lewis' Sutherland Statutory Construction (2d Ed.) vol. 1, section 76, p. 126.

The next point is that the act in question violates article 2, section 17, of our constitution of 1870. That section reads, so far as is necessary to be quoted:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

This section has given rise to a very great number of cases. Those up to 90 Tenn. are collected in *Hardaway* v. *Lilly* (Ch. App. 1898), 48 S. W., 712. Those in 90 Tenn. to 116 Tenn. inclusive, are catalogued in *Malone* v. *Williams,* 118 Tenn., 438, 103 S. W., 798, 121 Am. St. Rep., 1002. The cases published after 116 Tenn. up to 129 Tenn. are set out in *Palmer*

v. *Express Co.*, 129 Tenn., 116, 153, 154, 165 S. W., 236. The cases since the publication of that decision are *State ex rel.* v. *Persica*, 130 Tenn., 48, 168 S. W., 1056; *Bird* v. *State*, 131 Tenn. 518, 175 S. W., 554; *Todtenhausen* v. *Knox County*, 132 Tenn., 169, 177 S. W., 487; *Hamilton National Bank* v. *Amster*, 134 Tenn., 537, 184 S. W., 5; *Wilson* v. *Wilson*, 134 Tenn., 697, 185 S. W., 718.

We have re-examined all of these authorities in considering the present controversy, but only a few of them are applicable to the case as it is now before us.

The question is whether the body of the act contains any subject not expressed in the title. Obviously, in order to solve this matter we must determine the meaning of the title; also the meaning of the body of the act and compare one with the other.

The legislative intent is to be ascertained from the statute itself in connection with other statutes on the same subject, and not merely from a strict and accurate definition of the words alone. *Kelly* v. *State*, 123 Tenn., 516, 132 S. W., 193. A valuable review of our legislation upon the subject of intoxicating liquors appears in the case just cited. 123 Tenn. 531 *et seq.*, and page 550, 132 S. W.., 193. See, also, *Motlow* v. *State*, 125 Tenn., 560, 561, 145 S. W., 177. It is unnecessary to restate what appears on this subject in the cases cited. The history more particularly affecting the present legislation is not referred to in either of the authorities mentioned, but ap-

pears in the cases of *Tennessee Club of Memphis* v. *Dwyer,* 79 Tenn. (11 Lea), 452, 47 Am. Rep. 298, decided in 1883, *Hermitage Club* v. *Shelton,* 104 Tenn., 101, 56 S. W., 838 (year 1900), and *Moriarty* v. *State,* 122 Tenn., 440, 124 S. W., 1016, 25 L. R. A., (N. S.), 1252 (year 1909); all of which cases are reexamined and applied in an opinion handed down today in the case of *Tennessee ex rel.* v. *Mountain City Club,* 188 S. W., 579. The substance of the three cases first cited is that *bona fide* social clubs owning and keeping in store intoxicating liquors, bought with funds contributed by their members, for the use only of such members, in a way merely incidental to the general purposes of their organization, and distributing such liquors, among their members in accordance with their rules and without realizing any profit from such distribution, are not engaged in the sale of intoxicating liquors within the sense and meaning of the statutes forbidding the sale of intoxicating liquors, even though the quantities furnished each member, from time to time, are received by him in exchange for a ticket or tickets fixing a valuation on the amount so received at the time (such amount containing no profit), for which he is expected to settle when called on by the club, but for which, under the terms of the charter, no legal liability is incurred, and the only relief that the club can have is the automatic expiry of membership on failure to make reimbursement for the values so consumed. In *Tennessee Club of Memphis* v. *Dwyer,* it was said this was only in

fact an equitable and convenient mode of distributing refreshments to the members of the club, which were provided by the club for the members exclusively.

The history of the legislation, as set out in *Kelly* v. *State,* supra, and *Motlow* v. *State,* supra, shows that practially all the ground had been covered except the restraining of social clubs. The act of 1915 was without doubt intended to reach these organizations.

What is the meaning of the title? It reads:

"An act to prohibit persons, clubs, associations or lodges from storing, keeping, distributing, or in any way disposing of liquor containing more than one-half of one per cent, alcohol, on the premises of any association, lodge, or club and providing penalty for the violation thereof."

It is the constant practice in our cases to analyze titles and restate them in different words, so as to make clear the meaning the legislature intended to convey, extricating the title from confusing details unnecessarily embraced therein. *State* v. *Fickle,* 3 Lea (71 Tenn.), 79; *Garvin* v. *State,* 13 Lea (81 Tenn.); 162; *Railroad* v. *Crider,* 91 Tenn., 489, 493, 19 S. W., 618; *State* v. *Brown,* 103 Tenn., 449, 454-—456, 53 S. W., 727; *State* v. *McMinnville,* 106 Tenn., 384, 61 S. W., 785; *State* v. *Hoskins,* 106 Tenn., 430, 61 S. W., 781; *Hamilton National Bank* v. *Amster,* 134 Tenn., 537, 542, 184 S. W., 5; *Acklen* v. *Thompson,* 122 Tenn., 43, 126 S. W., 730, 135 Am. St. Rep., 851. So construing the title, by its words and in the

light of the history of the question it is clear that the purpose expressed by it was the prohibition and abrogation of the practice of social clubs in keeping intoxicating liquors on their premises for distribution or disposition among their members whether the liquors should be stored on such premises by the members themselves or by the club, association, or lodge.

Now we turn to the body of the act. What does it mean?

As said by Mr. Justice Lurton, in *Frazier* v. *Railroad,* 88 Tenn., 138, 153, 160, 12 S. W., 537, 542:

"In the ascertainment of the general subject of an act, this court must look to the provisions of the particular act under consideration. If, upon our knowledge of affairs, the act seems to contain matters not germane, but incongruous, we must declare it obnoxious to the provision prohibiting two subjects. . . . The determination as to whether the several provisions of an act are congruous and germane, becomes largely a question of fact."

In the leading case of *Cannon* v. *Mathes*, 8 Heisk. (55 Tenn.), 504, 523, it is said that:

"Any provision of the act, directly or indirectly, relating to the subject expressed in the title, and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it."

The principle is illustrated in the following cases: *State* v. *Whitworth*, 8 Lea (76 Tenn.), 594; *Garvin* v. *State,* supra; *Truss* v. *State*, 13 Lea (81 Tenn.), 311; *Frazier* v. *Railroad Companies,* supra; *State.* v.

*Brown,* 103 Tenn., 449, 455, 53 S. W., 727; *Condon* v *Maloney,* 108 Tenn., 82, 98—100, 65 S. W., 871; *Arbuckle* v. *McCutcheon,* 111 Tenn., 514, 77 S. W., 772; *Memphis* v. *Hastings,* 113 Tenn., 142, 162—166, 86 S. W., 609; *Rhinehart* v. *State,* 121 Tenn., 420, 117 S. W., 508, 17 Ann. Cas. 254; *Ransom* v. *Rutherford County,* 123 Tenn., 1, 21, 130 S. W., 1057, Ann. Cas. 1912B, 1356; *Todienhausen* v. *Knox County,* supra. It may be said generally that things naturally and usually connected in thought are germane to each other, as for example where they appear as incidents to the main subject, or. the means of its execution. The same is true of exceptions and provisos. (*State ex rel.* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941); but when construing the act in connection with the title it must be remembered that the latter may be either general or restrictive (*Railroad* v. *Byrne,* 119 Tenn., 278, 279, 104 S. W., 460); and where the title is restrictive the subject legislated about, in the body of the act, must be contained in the title otherwise the act will be fatally defective (*State* v. *Hayes,* 116 Tenn., 40, 93 S. W., 98; *Saunders* v. *Savage,* 108 Tenn., 340, 67 S. W., 471; *Ledgerwood* v. *Pitts,* 122 Tenn., 570, 125 S. W., 1036).

Now we are of the opinion that all of the provisions of the first section are germane to the purpose expressed in the title, as we have construed that purpose, except one, and that is the clause which forbids the maintaining of any "other place in which any liquor . . . is received or kept by a person

136 Tenn.—7

in his own name or otherwise . . . for the purpose of use, gift, barter, or sale as a beverage,'' and the further provision, ''and no person . . . within this State shall use, barter, sell, or give away, or assist in bartering, selling, or giving away, any liquor containing more than one-half of one percent. alcohol so received or kept.'' Under these provisions no person in the State could keep intoxicating liquor in any place, whether on the premises of a club or elsewhere, nor could he use such intoxicating liquors if kept in his home, or office, or place of business for personal consumption. We are not now deciding whether the legislature can constitutionally enact such a law. The right to do so is challenged in very earnest briefs, filed by counsel for the defendants, and supported equally as earnestly in briefs filed for the State. The question in the present case is not whether the legislature has power to enact such legislation, but whether it can be done under the restrictive title under which the present act appears. We are of the opinion that it cannot. It thus appearing that the body of the act contains a subject which does not appear in the title, the act is necessarily void under the constitution as being in violation of article 2, section 17. We think it perfectly clear that the construction we have given the body of the act is the correct one, naturally and inevitably arising out of a true interpretation of the language used to express the legislative purpose. This prohibition against any person keeping intoxicating liquor in

any other place for use goes far beyond the title, which, as we have seen, concerned only the storing and distribution or disposition of liquors in clubs, associations, and lodges, and the maintaining of such places for such purposes of storing, keeping, and distribution, or disposition.

It is insisted for the State that the words "or other place" mean "a place or premises under the control of an association, lodge, or club, or any ' similar place;" that they do not mean "the home or building of a citizen used as a residence, or business house, but that they must be construed to mean other club houses or lodges, or places of a similar nature, places under the control and management of an association, lodge, or club."

We do not think it possible to get this meaning out of the language used. Not only are clubs, associations, and lodges forbidden to keep or maintain, or abet or assist in maintaining any clubhouse, lodge, or other place, in which liquor is received or kept by such association, lodge, or club, for the purpose of use, gift, barter, or sale, as a beverage, but the language of the act further is that:

"It shall not hereafter be lawful for any person . . . to keep or maintain by himself . . . or by association with others . . . any clubhouse, lodge, or other place, in which any liquor . . . is received or kept by the person in his own name, or otherwise, . . . and no person . . . within this state shall use . . . any liquor containing

more than one-half of one per cent. of alcohol so received or kept."

It is perceived that the thought or conception of the individual person or citizen runs along and parallels that of the association of individuals, and the prohibition as to each is made as broad as language can make it, each according to his or its nature. Neither shall store or keep intoxicating liquors for use, or use such liquors in a clubhouse, or in any other place. This, as we have said, presses the prohibition far beyond the title of the act.

But it is urged by the State that inasmuch as the defendants were not indicted for storing or selling intoxicating liquors at any place other than upon their own premises, they have no standing to make the question; and in support of the contention we are referred to *Patton* v. *Chattanooga,* 108 Tenn., 230, 65 S. W., 414. But that case is not in point. There the legislation (a city ordinance) was not attacked on the ground that it violated the provisions of article 2, section 17, of the constitution, but a special provision was assailed on the ground that it purported to grant an exclusive franchise. The court said that even if the franchise purported to be exclusive, and the power to grant such a franchise did not exist, neither the franchise nor the ordinance would be invalid, but only the exclusive feature of the franchise; and that in any event a taxpayer, merely as such could not make the question, but only the city, or some one claiming, under the city's grant, a right in op-

position to the exclusive feature. As said in *Richardson* v. *Young*, 122 Tenn., 471, 522, 125 S. W., 664, no one has the right to attack a particular provision in a statute as unconstitutional, unless it affects him personally, or unless, if the attack be sustained, "the effect would be to render the entire act void." Such is the effect of a successful attack for violation of the two-subject clause (article 2, section 17) of the constitution. When an act is void under that provision of the constitution any one against whom such act is sought to be enforced may attack it on that ground, and if successful he will be relieved of whatever burden the statute in any of its parts seems to impose on him.

But it is insisted for the state that we should cut out the subject not within the title, pursuant to the rule announced in *State ex rel.* v. *Trewhitt*, 113 Tenn., 561, 82 S. W., 480, and cases in accord therewith, and thus save the act. But the two subjects are so interwoven that this cannot be done. Moreover, the doctrine referred to is one of extreme delicacy, and it is never applied when any doubt exists as to its applicability, or as to the power of the court to invoke it in the particular case. We do not think it applies in the case before us.

The act under which the two indictments were framed having been found unconstitutional and void, on the ground stated, it necessarily results that the judgment of the trial court quashing these indictments must be affirmed.