# Howard & Herrin v. Nashville, C. & St. L. Ry. Co.*

## (*Nashville.* December Term, 1925.)

1. **RAILROADS.** Statute requiring precautions against injury to "animal" held not to include dog (Shannon's Code, section 1574, subd. 4; Acts 1891, chapter 101).

   Shannon's Code, section 1574, subd. 4, requiring that certain precautions against accidents be taken "when any person, animal or other obstruction appears upon the road," when construed *in pari materia* with Acts 1891, chapter 101, does not include a dog or other animal of insufficient size to be an obstruction to a train within the term "animal." (*Post, pp.* 653-656.)

   Acts cited and construed: Acts 1855-56, ch. 94.

   Cases cited and approved: Railroad v. Brooks, 125 Tenn., 260; Fink v. Evans, 95 Tenn., 413.

   Cases cited and distinguished: Nashville & K. R. Co. v. Davis, 78 S. W., 1050; C. N. O. & T. P. Railway v. Ford, 139 Tenn., 291.

   Code cited and construed: Sec. 1574, subsec. 4. (S.).

2. **RAILROADS.**

   "Obstruction," within Shannon's Code, Section 1574, subd. 4, means obstacle, impediment, hindrance, bar, barrier, clog, or check. (*Post, pp.* 656, 657.)

   Case cited and approved: Nashville & C. R. Co. v. Carroll Adm'r., 5ᵤ Tenn., 347.

3. **RAILROADS.**

   "Live stock," within Acts 1891, chapter 101, means domestic animals used or raised on farm, especially cattle, sheep, and hogs, and does not include dogs. (*Post, p.* 657.)

   Acts cited and construed: Acts 1891, ch. 101.

4. **RAILROADS.**

   Since passage of Acts 1891, chapter 101, statutory precautions provided by Shannon's Code, section 1574, subd. 4, do not affect railroad's liability for injury to live stock except under special conditions. (*Post, pp.* 657, 658.)

Acts cited and construed: Acts 1891, ch. 101.

Cases cited and approved: Railroad v. Crider, 91 Tenn., 507; Railroad v. Russell, 92 Tenn., 108; Railroad v. Stonecipher, 95 Tenn., 311; Railroad v. House, 96 Tenn., 557; Railroad v. Tiernan, 102 Tenn., 708.

Code cited and construed: Sec. 1574, subsec. 4 (S.).

5. EVIDENCE.

It is common knowledge that railroad development is such that many former obstructions to trains are no longer such. (Post, pp. 658-660.)

Acts cited and construed: Acts 1891, ch. 101.

Cases cited and approved: Railroad v. Crider, 91 Tenn., 489; Railroad v. Patton, 104 Tenn., 40.

Code cited and construed: Sec. 1574, subsec. 4 (S.).

6. STATUTES.

Legislative intent must be ascertained from statute construed with others on same subject, and not merely from definitions of words alone. (Post, pp. 660-663.)

Acts cited and construed: Acts 1891, ch. 101.

Cases cited and approved: Harris v. State, 96 Tenn., 496; Coke & Coal Co. v. Steel Co., 123 Tenn., 428; Bird v. State, 131 Tenn., 518; Merrimam v. Lacefield, 51 Tenn., 209; Pond v. Trigg, 52 Tenn., 532; State v. Cumberland Club, 136 Tenn., 84.

Case cited and distinguished: Kelly v. State, 123 Tenn., 516.

Code cited and construed: Sec. 1574 (S.).

---

*On duty of railroads or street railways with respect to dogs on track, see note in 6 L. R. A. (N. S.), 911.

Right of action for injuries to dogs by railroad and street cars, see note in 40 L. R. A., 509.

Liability of railroad for killing dogs, see note in 37 L. R. A., 659.

---

FROM BEDFORD.

Appeal from the Circuit Court of Bedford County.— Hon. John E. Richardson, Judge.

J. D. Murphree, for appellant.

Fitzgerald Hall, Thos. N. Greer, Wm. Waller, and Frank Slemons, for appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

A dog, walking slowly south on the fenced track of the railroad company, in broad daylight, meeting and failing to yield the right of way to a heavy northbound passenger train, was struck and killed. The suit was brought to recover $1,000 as his value. He was a foxhound on the scent, and his extraordinary value rests largely on a characteristic exemplified by the manner of his death—he could neither be cajoled nor intimidated to leave the track—was removable only by superior physical force, which in this case he deliberately encountered.

The train was rounding off of a high bank above a river, and moving at a speed probably too great to admit of sudden stoppage with safety. The engineer was on the lookout, but did not observe the statutory precautions. He did not see the dog, but could not have avoided the accident by the use of the statutory precautions if he had seen him.

The testimony shows that a fox hunt was in progress, in which many dogs and their owners and judges were participating; that the owners of this dog knew of the

characteristic already noted—that if a fox should go on the track this dog would follow and would face a locomotive to his death in the pursuit. It further appears that many of the hunting party were present when the dog took to the track, and permitted the hunt to progress along the fenced tracks of the defendant. Upon the appearance of the train efforts were unavailingly made by some of the hunting party to call off the dog, and, also, a railroad track walker endeavored without success to drive or induce him to yield free passage to the train.

Pleas raising substantially the following defenses were interposed and sustained by the trial judge on a motion for peremptory instructions, and the suit dismissed: That (1) the statutory precautions do not apply to dogs on the chase, if they apply to dogs at all; that (2) since foxhounds will not leave a trail even to avoid obvious and certain death the owners in permitting their dogs to go on the railway's fenced track were guilty of the grossest negligence, as were the dogs themselves; that (3) the statutory precautions lack due process of law because of their arbitrary, unreasonable and unnecessary requirements; and that (4) the statutory precautions impose a direct and serious burden upon interstate commerce.

The pertinent statute is subsection 4 of section 1574 of Shannon's Code, reading as follows:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every pos-

sible means employed to stop the train and prevent an accident.''

The first of the defenses interposed challenges the applicability of this section of the statute to this foxhound dog.

While it must be conceded that in some of our published reports, and quite generally in the courts of the State, this statute has been treated as applying to dogs, we have no published opinion directly so adjudicating. Specific reference is hereinafter made to certain of these decisions. It is now earnestly insisted that whatever may have been a fair construction of this section of the statute at the time of its passage and during some years following, under modern present day conditions the provisions of this statute cannot reasonably be held to apply to an animal of the relatively slight weight and size of the average dog.

The purpose of the original railroad statute (chapter 94, Acts of 1855-56, now Shannon's Code, section 1574 et seq.), is thus declared therein: ''In order to prevent accidents upon railroads, the following precautions shall be observed.'' And it cannot be doubted, as said by this court in *Railroad* v. *Brooks,* 125 Tenn., 260, at page 268, 143 S. W., 64, that ''the object of the statute is primarily to protect human life''—human life—that thing which cannot be adequately compensated for in dollars and cents. This is the view in which this drastic statutory provision, carrying with it absolute liability, may be justified and sustained.

While it is true that in *Fink* v. *Evans,* 95 Tenn., 413, 32 S. W., 307, Mr. Justice WILKES remarked that, ''this court has heretofore held that a dog is such an animal

as the statute contemplates,'' he cites no case, and this expression was a recognition rather than a decision; and, too, since that case was reversed on a finding of fact that the engineer had used every possible precaution, either under the statute or the common law, to avoid killing the dogs, this statement, while pertinent to the discussion, was not strictly necessary to a decision of the case. Moreover, when some ten years later this same learned jurist was called upon to pass directly upon the applicability of this statute to a form of animal obviously not an obstruction, he plainly recognized that the distinction is properly drawn between those forms of animal life which constitute an obstruction and those which do not. Said he, in *Nashville & K. R. Co.* v. *Davis* (Tenn., 1902), 78 S. W., 1050:

''It would not seem that a goose was such an obstruction as would cause the derailment of a train, if run over. It is true, a goose has animal life, and, in the broadest sense, is an animal; but we think the statute does not require the stopping of trains to prevent running over birds, such as geese, chickens, ducks, pigeons, canaries, or other birds that may be kept for pleasure or profit. Birds have wings to move them quickly from places of danger, and it is presumed that they will use them (a violent presumption, perhaps, in the case of a goose, an animal which appears to be loath to stoop from its dignity to even escape a passing train). But the line must be drawn somewhere, and we are of the opinion that the goose is a proper bird to draw it at. We do not mean to say that in the case of recklessness and common-law negligence there might not be a recovery for killing geese, chickens, ducks, or other fowls, for that case is not presented. Snakes, frogs, and fishing worms, when upon

railroad tracks, are, to some extent, obstructions; but it was not contemplated by the statute that for such obstructions as these trains should be stopped, and passengers delayed.''

Undoubtedly, a full grown goose is in greater degree an obstruction than a small sized dog. Can it be said that either is? And can the statute logically be held applicable to the dog, the cat, or the fox and not applicable to such a valuable fowl as the highly bred rooster, the turkey or the peacock?

In the comparatively recent case of *C. N. O. & T. P. Railway* v. *Ford,* 139 Tenn., 291-295, 202 S. W., 72, 73, Chief Justice GREEN, denying recovery under the statute for an unregistered dog, while conceding that dogs are property, and that it had been recognized in *Fink* v. *Evans,* supra, that the statutory precautions apply to dogs on the tracks, significantly and pertinently to the present discussion, says:

''A collision with an ordinary dog would not menace the safety of the passengers on a train, and there is no reason to observe the statutory precautions for this reason. On a like ground it has been held unnecessary to take statutory precautions to avoid a collision with a goose''—citing *Nashville, etc., R. Co.* v. *Davis,* supra.

That is, neither a goose nor a dog is an obstruction to a railway train, and human life, the protection of which is the primary purpose of the statute, is not imperiled by failure to observe these requirements when these objects appear. If this is the purpose of these rigid requirements, then should not the application of this statute be limited to ''persons''—human life—on the track, and to

such animals or other obstructions only as may imperil lives on the train?

An analysis of the language of the act would seem to support this view. It is apparent that in carrying out this fundamental or primary purpose appropriate language has been used: "When any person, animal, or other obstruction appears upon the road," etc. That which calls for the taking of these statutory precautions, failure to observe which entails drastic penalties, must be of a character which in some appreciable degree constitutes an obstruction to the free passage of the train, with danger to the lives and limbs of persons riding thereon.

Nor is the realm of technicality invaded if the word "obstruction" be thus given its ordinary, everyday meaning. It is defined in Webster's New International Dictionary as "that which obstructs or impedes; obstacle; impediment; hindrance. Sny.—Bar, barrier, clog, check." So, to obstruct is "to block up; to stop up or close, as a way."

This court has said that obstruction "can only mean that which may . . . hinder the free and safe passage of the train, or that which may receive an injury or damage, such as would be unlawful to inflict, if run over or against by the train, as in case of stock, or a man approaching on the track." *Nashville & C. R. Co.* v. *Carroll, Adm'r*, 53 Tenn. (6 Heisk.), 347.

It may be said that the strict limitation of the statute to an obstruction on the track, under the modern conditions above noted, would exclude a child, or any person. But, in harmony with the underlying purpose of the legislation as above stated, which is to protect human life,

this exception to the restriction to what are properly obstructions can be consistently recognized and enforced.

Moreover, it will be observed that we are not here dealing with a case of live stock, a dog being an animal clearly not within that definition. There is no difficulty in defining stock or live stock, specifically protected by the Act of 1891, chapter 101. The term includes "domestic animals used or raised on a farm; especially cattle, sheep, hogs, etc." International Dictionary. And dogs are not stock or live stock within the meaning of such statutes. 33 Cyc., 1165, and cases cited.

It is well settled, since the passage of the railroad fencing act (chapter 101, Acts 1891), that the statutory precautions provided for by subsection 4 of section 1574 of Shannon's Code have no relation to the liability of railroads for injury to live stock, except under special station or crossing conditions. *Railroad* v. *Crider,* 91 Tenn., 507, 19 S. W., 618; *Railroad* v. *Russell,* 92 Tenn., 108-111, 20 S. W., 784; *Railroad* v. *Stonecipher,* 95 Tenn., 311, 32 S. W., 208; *Railroad* v. *House,* 96 Tenn., 557, 35 S. W., 561; *Railroad* v. *Tiernan,* 102 Tenn., 708, 52 S. W., 179.

And, in passing, it may be remarked that, if the statutory precautions now apply to a dog on the track, then the result of our legislation, taking subsection 4 and the act of 1891 together, is to relieve the railroad company from liability for the killing of valuable live stock on its fenced track, while fastening liability for the killing of a dog under like conditions. Certainly a deduction which would call for the observance of statutory precautions in the case of a dog and not in the case of a horse, cow, or other live stock, should invite careful analysis.

The original statutory precautions act was passed some seventy-five years ago. It is more than thirty years since the opinion was written in *Fink* v. *Evans,* supra, wherein recognition was passingly given to the inclusion of dogs within the terms of the statute, and nearly a quarter of a century has now passed since the opinion of Mr. Justice WILKES, above quoted from at length, was written.

It is a matter of common knowledge that such has been the development of railways in strength and steadiness of roadbeds and in weight and power of movable equipment, that objects which formed obstructions seventy-five or even twenty-five, years ago, are such no longer. In the earlier days of railroading, when rails were light and insecurely held together, locomotives small, and cars of wood and relatively weak in structure, collisions with comparatively small animals and other objects naturally and frequently resulted in derailments and kindred accidents fatal to crews and passengers. But under present conditions a dog of average size is certainly no more an obstruction to the mighty moving trains of modern commerce than was the goose in 1902, or the "snakes, frogs, and fishing worms" of which Mr. Justice WILKES then wrote. While in that opinion suggestion was made of a possible differentiation between bird life and other animal life, the real reasoning leads logically to the basis we now adopt, that is, the distinction between objects on the track, other than human beings, embraced in the statute on grounds already stated, of such size and character as to constitute obstructions, and those so relatively inconsequential in this regard as not possibly to come within this definition.

The principle which would seem reasonably to apply does not particularize this or that animal, but rests logically upon the question of relative size and consequent resistance, or obstruction. The bird nature of the goose affords no truly distinctive basis. The wings of the slow-footed goose offer no quicker means of removal than the fleet feet of the cat or fox or dog. The emergency movement called for is lateral and not upward. Neither the quality of obstruction, nor that of facility of removal, is greater in the goose than in the animals named and in others that might be named.

Moreover, by the act of 1891, supra, railroad companies were declared liable for all damages by reason of the killing or injury of live stock upon or near their unfenced tracks by their moving trains, cars, or engines. This act contains several sections, and the word "stock" is used throughout. The effect of the act is to make railroad companies absolutely responsible for stock killed on their unfenced tracks and to relieve railroad companies of the observance on their fenced tracks of the precautions required by subsection 4 of Shannon's Code, section 1574, for the protection of such stock.

The purpose of the act of 1891 was likewise the prevention of accidents on railroads. *Railroad* v. *Crider,* supra, 91 Tenn., 489, 19 S. W., 618. "To induce railroad companies to fence their tracks, primarily in the interest of the traveling public, and, secondarily, for the protection of live stock along the line of travel. *Railroad* v. *Russell,* supra.

This act was designed to supersede subsection 4 of Shannon's Code, section 1574, in respect to the duties of railroad companies as to live stock on all parts of

their lines to which the fencing statute applied. *Railroad* v. *Russell*, supra; *Railroad* v. *Tiernan*, supra, 704; *Railroad* v. *Patton*, 104 Tenn., 40, 54 S. W., 984.

It thus appears that chapter 101 of the Acts of 1891 was supplementary to Shannon's Code, section 1574, and was part of a scheme or plan for the prevention of accidents upon railroads, primarily, and for the protection of live stock, secondarily. That is to say, the Code provision and the act of 1891 are statutes *in pari materia*, and they should be construed together.

Statutes forming a system or scheme should be construed so as to make that scheme consistent in all its parts and uniform in its operation. *Harris* v. *State*, 96 Tenn., 496, 34 S. W., 1017; *Coke & Coal Co.* v. *Steel Co.*, 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278; *Bird* v. *State*, 131 Tenn., 518, 175 S. W., 554, Ann. Cas., 1917A, 634. All acts *in pari materia* should be taken together as if one law. *Merrimam* v. *Lacefield*, 51 Tenn. (4 Heisk.), 209.

Since we cannot give to the word animal, as used in the Code section mentioned, its broadest significance, and the meaning of this word must be determined by construction, under familiar rules, we should look to other statutes *in pari materia* with the Code section to arrive at the meaning of that section. The legislative intent is to be ascertained from a statute in connection with other statutes on the same subject and not merely from a strict and accurate definition of the words alone. *Pond* v. *Trigg*, 52 Tenn. (5 Heisk.), 532; *Kelly* v. *State*, 123 Tenn., 516, 132 S. W., 193; *State* v. *Cumberland Club*, 136 Tenn., 84, 188 S. W., 583.

"In the passage of each act, the legislative body must be supposed to have had in mind and in contemplation the existing legislation on the same subject, and to have shaped its new enactment with reference thereto, hence the same principle which requires us to study the context for the meaning of a particular phrase or provision, and which directs us to compare all of the several parts of the same statute, only takes us on a broader scope when it bids us read together, and with reference to each other, all statutes *in pari materia.*" Black on Interpretation of Law, p. 204, quoted and followed in *Kelly* v. *State,* supra.

Applying the foregoing rule of construction, and taking Shannon's Code, section 1574, and chapter 101 of the Acts of 1891 together as one law, we think that the use of the word "stock" in the act· of 1891 makes plain the meaning of the word "animal" in the Code section, and that in this scheme of legislation these two words are used synonymously. Such construction renders the system consistent in all its parts and uniform in its operation.

We think therefore that, by chapter 101 of the Acts of 1891, the legislature not only intended to pass an additional measure for the prevention of accidents and the protection of property, but, by the use of the word "stock," it was the legislative intent to more clearly define what animals were included in this protective scheme.

It results that, both because a dog is not an obstruction in the contemplation of subsection 4, section 1574 of Shannon's Code, and also because a dog is not the character of animal intended to be protected by this statute when construed along with chapter 101 of the Acts

of 1891, this suit based on subsection 4, supra, was right·· ly dismissed.

The dog has frequently great value, both actual and sentimental. He is the proverbially faithful friend of man. Reckless and wanton injury of him is universally condemned, and the courts are ever open to his master for redress of such injuries, and also of those inflicted through common-law negligence only.

The nonapplicability of this statute is extended under present day conditions to the dog, as it has heretofore been to the fowl, often of high value, and to the "snake, frog, or fishing worm," and as it must be extended to all other domestic or wild animals of such relatively small size as that their bodies offer no impediment, resistance, or "obstruction" to the passage of the modern train.

Upon the facts proven in the instant case, it is plausibly insisted, under the second ground of defense, that the conduct of this animal and his master was such as to bring this case within the authority of *N. C. & St. L. Ry. Co.* v. *Riley* (Henderson Law, 1906, memorandum opinion). In that case, in which recovery was denied, it was found that the plaintiff was a hunter who "chose to expose his dogs to the danger of the passing train by allowing and encouraging them to go down the track and cross this trestle, when he knew that the train was due." A case of deliberate and practically intentional destruction of his dogs was made out, going beyond even gross negligence.

However, in view of the conclusion reached and already stated with respect to the first ground of defense, it becomes unnecessary to determine the issues of law and

fact arising out of the conduct of the owner in negligently co-operating in the trespass which resulted in the accident, or to consider the interstate commerce or constitutional questions made by other pleas.

The judgment is affirmed.

Chief Justice GREEN concurs in the result but on the ground only that a dog is not the character of animal intended to be protected by the precautionary signal statute when construed *in pari materia* with chapter 101 of the Acts of 1891.